## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**ANDRE LAMONT BOYD on Behalf of Himself and All Others Similarly Situated**

　　　Plaintiff,

　　　vs.

**CEVA FREIGHT, LLC., et al,**

　　　Defendants.

Civil Action No. 3:13cv150

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

COMES NOW Andre Lamont Boyd, by counsel, and for his Memorandum in Opposition to Defendants' Motion for Partial Judgment on the Pleadings states as follows:

### I.　　　INTRODUCTION

CEVA Defendants[1] seemingly ignore the standard applicable to Rule 12(c) (really Rule 12(b)(6)) motions and inappropriately re-cast Boyd's theory of their collective liability stated in the First Amended Complaint ("FAC") (ECF No. 16). In doing so, they ignore the facts expressly alleged in the FAC and assert their own facts outside the pleadings. They also grossly misconstrue the Fair Credit Reporting Act and its text.

Because the text of the statute is unambiguous and the allegations in the FAC plausible, CEVA's early motion should be denied.

### II.　　　THE STATUTE (Fair Credit Reporting Act)

Any meaningful argument must begin with the actual text of the statute at issue, in this case the Federal Fair Credit Reporting Act (FCRA). The FCRA governs all types of uses for

---

[1] The CEVA Defendants are collectively referred to herein as "CEVA".

personal consumer reports containing nearly any nature of personal information.  15 U.S.C. §§ 1681a(d) and 1681b(a).  This case is about the use of such reports for employment purposes.  15 U.S.C. § 1681b(b).

Congress enacted the FCRA in 1970 with the remedial purpose to protect consumers in the improper use of their personal information in credit and in employment.[2]  To that end, the FCRA uniquely restricts the procurement and use of a consumer report for an employment purpose.  These restrictions are codified at 15 U.S.C. § 1681b(b).  Section 1681b(b)(1) requires a user of an employment report to make certain certifications to the consumer reporting agency from whom it obtained the report.  Section 1681b(b)(3) governs what an employment user must do before it takes an "adverse action" based on the report.  But the relevant section for the present motion is § 1681b(b)(2), which itself then has three relevant parts.  Subpart (C) defines two unique categories of employers/report users and circumstances.  First, trucking companies and other similar businesses that are considering an applicant "for a position over which the Secretary of Transportation has the power to establish qualifications and maximum hours of service […]" must follow specific requirements when "as of the time at which the person procures the report or causes the report to be procured the only interaction between the consumer

---

[2] The Fourth Circuit has explained:

> Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S.Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); *see also Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir.1995); *St. Paul Guardian Ins. Co. v. Johnson,* 884 F.2d 881, 883 (5th Cir.1989); *Hovater v. Equifax, Inc.,* 823 F.2d 413, 416–17 (11th Cir.1987). Employers were placing increasing reliance on consumer reporting agencies to obtain information on the backgrounds of prospective employees. Congress found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment. As Representative Sullivan remarked, "with the trend toward ... the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable." 116 Cong. Rec. 36570 (1970).

*Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001).

and the person in connection with that employment application has been by mail, telephone, computer, or other similar means." 15 U.S.C. § 1681b(b)(2)(C). Those FCRA rules are imposed at § 1681b(b)(2)(B). Second, if these qualifiers do not govern – it was ***not*** a job regulated by the Department of Transportation and/or the consumer applicant applied ***in person*** - then the governing FCRA employment rules are at § 1681b(b)(2)(A).

In the FAC, Boyd alleges that the truck driving position he sought was governed by the Department of Transportation (ECF No. 16, ¶ 20) and CEVA obtained his consumer report before he had an in-person interaction.   (ECF No. 16, ¶ 22)  Thus, the relevant FCRA provision is at § 1681b(b)(2)(B), which states in full:

> (B) **Application by mail, telephone, computer, or other similar means**
>
> If a consumer described in subparagraph (C) applies for employment by mail, telephone, computer, or other similar means, at any time before a consumer report is procured or caused to be procured in connection with that application—
>
> (i) the person who procures the consumer report on the consumer for employment purposes shall provide to the consumer, by oral, written, or electronic means, notice that a consumer report may be obtained for employment purposes, and a summary of the consumer's rights under section 1681m(a)(3)[3] of this title; and
>
> (ii) the consumer shall have consented, orally, in writing, or electronically to the procurement of the report by that person.

In this action, Boyd alleges that CEVA procured or caused the procurement of his consumer report, but did not make any of these very specific disclosures. (ECF No. 16,  ¶¶ 20, 31, 32).  There is no ambiguity in the FAC, nor in the original Complaint.  The violation alleged is 15 U.S.C § 1681b(b)(2)(B).  Boyd does not allege a violation of the FCRA provisions that are the subject of CEVA's memorandum, 15 U.S.C. § 1681b(b)(2)(A).  That section, like most of CEVA's argument, is inapplicable to this case.

---

[3] The disclosures incorporated in this provision were originally at § 1681m(a)(3), and are now at § 1681m(a)(4).

In the employment context, job applicants' work histories, driving records, and criminal record histories are compiled by consumer reporting agencies and sold to employers like CEVA seeking to screen applicants. Though proof of "inaccuracy" is not a necessary element of the specific FCRA claims alleged in this case, the consumer report obtained and then later used by CEVA regarding Boyd was inaccurate. (ECF No. 16, ¶ 27). Boyd's DAC report provided an erroneous date of service with a previous trucking company, painting Boyd as dishonest on his CEVA application. Being the victim of erroneous consumer reports is all too common for a large number of consumers who are subject to employment-purposed consumer reports. *See e.g.* http://abcnews.go.com/Technology/background-check-wrongly-ids-job-applicant-sex-offender/story?id=14405696#.Ttk1bkpLofI last visited September 16, 2013.

Boyd's FAC sets forth a classic example of an employer's use of consumer reports to make employment decisions outside the boundaries of the FCRA. CEVA now seeks dismissal on grounds that must be rejected out of hand by the Court.[4] As explained fully below, the FCRA contains plain language governing the use of such reports with respect to applicants like Boyd, and provides no exception or carve-out to justify CEVA's misreading of the law.

## III.   ARGUMENT

### A.   STANDARD OF REVIEW

### 1.    Defendants' Motion Ignores the Rule 12 Deferential Standard of Review.

As CEVA acknowledges, the standard of review applicable to a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) is the same as a motion to dismiss under Rule 12(b)(6). *See Walker v. Calhoun,* 2013 U.S. Dist. LEXIS 103628, 7-8 (E.D. Va. July 22, 2013). When ruling on a defendant's motion to dismiss, the court must accept as true all of the allegations

---

[4] CEVA makes no effort to defend Boyd's allegations that it failed to provide mandated adverse action notices under the FCRA. For purposes of its Motion for Partial Judgment on the Pleadings, CEVA impliedly concedes that Boyd alleges a proper claim against CEVA Logistics, LLC for violations of 15 U.S.C. § 1681b(b)(3)(B).

contained in a complaint and "then determine whether they plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). As the Supreme Court recently held, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under *Twombly's* construction of FED. R. CIV. P. 8, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.   Under this standard, Boyd's FAC pleads sufficient facts from which the Court can infer that CEVA violated §1681b(b)(2)(B) as well as § 1681b(b)(3)(B).   Recognizing this fact, much, if not all of CEVA's 12(c) arguments extend beyond the purview of the rule, reaching the boundaries of a dispositive motion under FED. R. CIV. P. 56.[5]

### 2.   CEVA improperly relies on evidence outside the Complaint and First Amended Complaint.

As a threshold matter, CEVA's arguments regarding the appropriate named defendants are dependent upon a declaration attached to their Answer to Boyd's First Amended Complaint. This declaration provided by CEVA's human resource manager purports to explain Boyd's online application process in an effort to confine his interaction to only CEVA Logistics, U.S., Inc.  But a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) is not the proper vehicle to raise new facts, dispute facts by way of argument or documents outside the pleadings.  It is well settled that a court must accept as true, all the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Thus the court may exclude extraneous documents,

---

[5] CEVA does not ask or suggest that the Court convert the present motion to one considered under FED. R. CIV. P. 56.  In the event the Court is inclined to do so, Boyd asks for leave to supplement his response, and for a stay pursuant to FED. R. CIV. P. 56(d) to accomplish relevant discovery sufficient to respond to such motion.

consider the motion to be for summary judgment, or in limited circumstances, consider the documents so long as the plaintiff does not dispute their authenticity and that the document is both explicitly relied upon in the complaint and integral to the plaintiff's claim. *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *M. Shanken Communications, Inc. v. Variant Events, LLC*, 3:10-CV-804, 2011 WL 2078007, at *2 (E.D. Va. May 25, 2011); *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Still, "if the parties submit documents outside the pleadings, 'the Court ... retains discretion to disregard any extraneous exhibits submitted by Defendant and to treat the motion as a standard one for failure to state a claim under Rule 12(b)(6)[.]'"[6] *M. Shanken Communications, Inc,* 2011 WL 2078007, at *2(quoting *Harmon v. CB Squared Servs. Inc.,* No. 3:08–CV–799, 2009 WL 234982 (E.D. Va. Jan. 30, 2009) (citing *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir.2007)).

CEVA attempts to divert the Court's attention away from the facts and claims that are actually raised in the FAC and instead direct the inquiry into issues raised only in an extraneous declaration attached to CEVA's Answer to the FAC. The FAC alleges that ***all*** CEVA Defendants operate with a single Human Resource department or process. (ECF No. 16, ¶ 19) Whether a consumer technically signs a document between one CEVA entity or another, all operate collectively as one human resources "user" of consumer reports. *Id*.

The declaration attached to CEVA's Answer to the FAC merely attempts to dispute the facts alleged in the FAC, and it simply should not be considered in a Rule 12(c) posture. *Compare Standard Fire Ins. Co. v. Proctor*, 3:10CV655-HEH, 2011 WL 3269633 (E.D. Va. July 29, 2011)(finding that an insurance policy repeatedly referenced in the complaint was properly

---

[6] As explained above, the standard of a rule for a motion brought under Fed. R. Civ. P. 12(C) is the same as the standard for motions under FED. R. CIV. P. 12(b)(6). *See Walker v. Calhoun,* 2013 U.S. Dist. LEXIS 103628, 7-8 (E.D. Va. July 22, 2013).

considered as a part of the Plaintiff's claims and therefore the policy itself could be considered by the court in deciding a motion to dismiss) *with GTSI Corp. v. Wildflower Int'l, Inc.*, 1:09CV123 JCC, 2009 WL 1248114 (E.D. Va. Apr. 30, 2009)(refusing to consider competing agreements in dispute).

This Court and the Fourth Circuit have consistently instructed courts to refuse to consider documents outside the pleadings as well as facts supplied by counsel when deciding a motion to dismiss unless the documents or facts fall squarely within the contours of the exception that only documents integral to the plaintiffs claims may be considered. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d at 448-50 (reversing the district court's reliance both on fact statements presented by counsel and the agreements that purportedly established a defense against anti-competition claim); *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 Fed.Appx. 820, 825 (4th Cir. 2010) (statements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion).

Adopting the rationale articulated by the Third Circuit in *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997), the Fourth Circuit held

> The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d at 234. Defendants have sidestepped the issue that their attempt to include documents is within the narrowly drawn exception to the general rule.  In fact, there are instances where the court may not rely on

documents referenced in the complaint itself if such documents do not give rise to the legal contentions made:

> Yet it is important to note that this principle does not apply to any and all documents that might be referenced in a complaint; rather, this principle requires more: it requires that the referenced document be central or integral to the claim in the sense that its very existence, and not the mere information it contains, gives rise to the legal rights asserted. The cases illustrate this requirement. Thus, where a complaint in a fraud action references a document containing the alleged material misrepresentations, the referenced document may be considered part of the complaint.

*Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806-07 (E.D. Va. 2007)(refusing to consider a newspaper article referenced in a Complaint containing what might be material statements because of the unreliability of the underlying source).[7]  Even in a case involving a contract dispute, where the plaintiff clearly alleged a contract that was attached to the Complaint, the court found it was impermissible to consider it or a competing version of the agreement attached by the Defendant to its Motion to Dismiss.  *GTSI*, 2009 WL 1248114, at *5.  Instead of considering the disputed contract, the court held it was bound to rely on the Rule 12(b)(6) standard of review, requiring it to take the allegations of fact in the complaint as true and construe all inferences in favor of the non-moving party.  *Id.*

In this case, it is improper for the Court to consider CEVA's declaration, even if the testimony could somehow be dispositive of some material fact down the road.  *See Beasley v.*

---

[7] Courts exercise discretion to disregard documents attached either by the plaintiff or a defendant in relation to a motion to dismiss.  *See Braun v. Maynard*, 652 F.2d 557, 559 (4th Cir. 2011)(disregarding an internal report attached to the plaintiff's response to a motion to dismiss, where it was not relied upon in the Complaint); *Beasley v. Arcapita Inc.*, 436 F.App'x 264, 267 (4th Cir. 2011)(declining to consider as true legal conclusions or extrinsic documents even "if we may foresee the claim's later failure at the summary judgment state, we must refrain from examining its underlying merits."); *Bellotte v. Edwards*, 388 F.App'x 334, 337 (4th Cir. 2010)(holding that in considering affidavits attached to a motion to dismiss, the court implicitly converted it to a motion for summary judgment, which was properly denied). Likewise, the court may consider documents that were both relied upon by the plaintiff and integral to the complaint.  *Whitaker v. Wells Fargo Advisors, LLC*, 3:11CV380-HEH, 2011 WL 4565430 (E.D. Va. Sept. 29, 2011)(overruling plaintiff's objection to the court's consideration of extrinsic documents that "the Complaint continuously reference, and is based upon"); *Pazmino v. LaSalle Bank, N.A.*, 1:09CV1173-GBL, 2010 WL 2039163 (E.D. Va. May 20, 2010) *aff'd sub nom. Pazmino v. La Salle Bank N.A.*, 10-1739, 2011 WL 3235638 (4th Cir. July 29, 2011).

*Arcapita Inc.*, 436 F.App'x at 267.  Whatever facts the Court relies upon in reaching its decision, it must rely on the well-pled facts of the FAC and reasonable inferences in favor of Boyd, not on CEVA's supplemental facts and extrinsic declaration.

## B.   COUNT I PLAUSABLY STATES A CLAIM THAT CEVA VIOLATED 15 U.S.C. § 1681b(b)(2)(B).

### 1.   Section 1681b(b)(2)(A) is Inapplicable to this case.

CEVA's primarily argues that the consent form and notice attached as Exhibit "A" to its motion satisfied the requirement of 15 U.S.C. § 1681b(b)(2)(A). (ECF No. 27-1).  But this provision is not at issue in this case.  To get there, CEVA must first argue, and win, that trucking company "users", even when obtaining reports on non-in-person applicants, can pick and chose which compliance provision they may follow – (A) or (B).  But despite the dispositive import of this component of CEVA's argument, its brief hardly addresses the question.  CEVA devotes barely a page to the question and offer no meaningful analysis or explanation to bolster the unsupported claim that, "[d]espite the enactment of (B)(i), a potential employer may still provide a disclosure under subsection (A)(i) as an alternative." (ECF No. 27, p. 8).[8]  As explained above, the statutory text is crystal clear.  Subsection (B) applies to trucking companies when the application is not in person, and (A) applies to everything else.  An employment user does not get to pick and chose.

---

[8]Boyd states his preemptory objection to a belated and uncontestable introduction of new arguments or explanations in their Reply brief.  *Ilozor v. Hampton Univ.*, 2007 U.S. Dist. LEXIS 33032, 38-39 (E.D. Va. May 3, 2007) (raising new issues in its reply brief, to which the plaintiff was not permitted to reply, is a violation of a "well-accepted and undisputed rule in federal motions practice."); *Eversole v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 49166, 23-24 (E.D. Va. Apr. 6, 2012)(holding it is improper under the Federal Rules of Civil Procedure to assert new legal theories in briefs); *Speller v. Johnson*, 2012 U.S. Dist. LEXIS 42312, 41 (E.D. Va. Mar. 27, 2012) (requiring a party to move to amend pleadings rather than asserting them "simply by a passing statement"); *E.I. DuPont de Nemours & Co. v. Kolon Indus.*, 847 F. Supp. 2d 843, 864 (E.D. Va. 2012)( holding its unjust and would undermine the integrity of the judicial process if the Court were to consider new arguments in brief because opposing counsel has no opportunity to respond.); *Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) ("new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs"); *Snyder v. United States*, 263 Fed. App'x 778, 779 (11th Cir. 2008) (refusing to consider a party's statement in a reply brief as an attempt to add a new claim).

For the traditional procurement of consumer reports by employers for employment purposes, the employer must provide the applicant with a clear and conspicuous, stand-alone document containing only a disclosure that a consumer report may be obtained for employment purposes.   The applicant must then authorize the procurement in writing. 15 U.S.C. § 1681b(b)(2)(A). This traditional disclosure does not require the employer to inform the applicant, *up front*, of his right to receive a free copy of the consumer report or his right to dispute the contents of the report.   Indeed, for such traditional applicants, the employer must provide a second notice prior to denying employment, which includes not only a copy of the consumer report, but a written summary of rights prepared by the Federal Trade Commission.  (the "Pre-Adverse Action Notice").  The Pre-Adverse Action Notice and the mandated accompanying FTC Statement of Rights form explain among other things, the consumer's right to obtain a free copy of the background check directly from the consumer reporting agency and the right to dispute the accuracy or completeness of the report.

The FCRA mandates a *different, not alternative,* notice process for online truck driving applicants like Boyd.  For these applicants, it is vital that the applicant understand the right to receive a free copy of his consumer report up front, as he *is not* entitled to the written FTC notice before employers like CEVA reject applications based in whole or in part on the report. Moreover, such applicants are not entitled to automatically receive a copy of their report *before* the employer denies employment.  Simply put, online truck driving applicants are not entitled to know the contents of their report *prior* to the denial of employment.

Because applicants like Boyd are not entitled to Pre-Adverse Action Notice, the FCRA mandates that CEVA provide written, oral, or electronic notice to such applicants after denying employment as follows:

1. that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency;

2. of the name, address and telephone number of the consumer reporting agency that furnished the consumer report (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis);

3. that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and

4. that the consumer may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report.[9]

CEVA ignores its obligations to provide these more descriptive notices.

Again, for in-person truck driving applicants -- and for every other industry -- the procurement and use of consumer reports for employment purposes falls within the purview of § 1681b(b)(2)(A)(i).   This distinct section of the FCRA requires that an employer provide a clear and conspicuous disclosure to applicants in writing *before* procuring the applicant's consumer report for employment purposes. This section also requires the employer to obtain a written authorization from the job applicant after making the disclosure, and before obtaining the report. 15 U.S.C.S. § 1681b(b)(2)(A)(ii); *see also Reardon v. ClosetMaid Corp.,* 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011). An employer's obligation to obtain the applicants authorization "before the report is procured" is unambiguous and has a clear meaning. *Id*

But, in the trucking industry, where carriers "seek applicants in all parts of the country and communicate primarily by telephone, fax or mail[10]" the "clear and conspicuous" stand-alone disclosure and "written authorization" requirements found under § 1681b(b)(2)(A)(i) and (ii) are

---

[9] If the consumer requests a copy of a consumer report from the employer, then, within 3 business days of receiving the consumer's request, together with proper identification, the employer must send or provide to the consumer a copy of a report and a written copy of the FTC Summary of Rights. *See* 15 U.S.C. § 1681b(b)(3)(B)(ii).

[10] Representative LaFalce, 1998 CR H10220, October 8, 1998.

*inapplicable*.  Instead, this narrow category of non-in-person applicants are entitled to receive a different set of notices and provide authorization in writing, orally, or electronically. *See* 15 U.S.C.S. § 1681b(b)(2)(B). Most importantly, it is mandatory that these **be coupled** with notice of the right to receive a free copy of the consumer report provided by the CRA **within 60 day**s and a right to dispute the accuracy and completeness of the report. *Id.* And **after** receiving these notifications, the applicant must likewise authorize in writing, orally, or electronically the procurement of the consumer report. *See* 15 U.S.C.S. § 1681b(b)(2)(B)(ii).  Unless these simple, yet fundamental rights are explained, an applicant's authorization is meaningless and invalid.

Not only does CEVA fail to provide any case law or statutory authority permitting it to pick and choose the type of notices it provides online truck driving applicants, it flatly ignores the statutory text in 15 U.S.C.S. § 1681b(b)(2)(C). This section provides:

> (C)  **Subparagraph (B) shall apply** to a person procuring a consumer report on a consumer in connection with the consumer's application for employment only if—
>
> (ii) as of the time at which the person procures the report or causes the report to be procured the only interaction between the consumer and the person in connection with that employment application has been by mail, telephone, computer, or other similar means.

Despite the clear statutory scope of § 1681b(b)(2)(B) notices described above, CEVA incorrectly asserts that 15 U.S.C.S. §1681b(b)(2)(B)(i) is permissive instead of controlling, and that it is merely an alternative to subsection (A)(i) when dealing with online applicants. In reaching this conclusion, CEVA outright misquotes the statutory language of subsection (B)(i): "Under subsection (B)(i), an employer seeking to procure a consumer report on an applicant who is applying for certain transportation-related jobs **may** provide that applicant with…" (ECF No. 27, p. 8.)  Subsection (B)(i) actually states:

If a consumer described in subparagraph (C) applies for employment by mail, telephone, computer, or other similar means, at any time before a consumer report is procured or caused to be procured in connection with that application--

(i) the person who procures the consumer report on the consumer for employment purposes *shall provide* to the consumer, by oral, written, or electronic means, notice that a consumer report may be obtained for employment purposes, and a summary of the consumer's rights under section 615(a)(3)" [15 USCS § 1681m(a)(3)][11]; and

(ii) the consumer shall have consented, orally, in writing, or electronically to the procurement of the report by that person. 15 U.S.C.S § 1681b(b)(2)(B)(i). (emphasis added)

CEVA's substitution of *may* for *shall* is revealing. Also concerning, the first sentence of subsection (A)(i), which CEVA cites as controlling, unambiguously states:

*Except as provided in subparagraph (B),* a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless.... 15 U.S.C.S. § 1681b(b)(2)(A)(i) (emphasis added).

Again, CEVA cites absolutely no case law to support its conclusion that "despite the enactment of subparagraph (B)(i), a potential employer may still provide a disclosure under subsection (A)(i) as an alternative." (ECF No. 27, p. 8). Indeed, no court has ever adopted such a loose interpretation of the FCRA.

CEVA also contends that the rigors of the FCRA are somehow "relaxed" for trucking companies. (ECF No. 27, at 8 and *in passim*). CEVA is flatly wrong. In fact, courts must construe the statute liberally in favor of consumers. "The FCRA is aimed at protecting consumers from inaccurate information in consumer reports and at the establishment of 'reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner.'" *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964-65 (6th

---

[11] Boyd acknowledges that Congress has not corrected §1681b to refer to §1681m(a)(4); however, §1681b(b)(2)(B)(i) correctly refers to an employer's obligations under the Fair Credit Reporting Act provision 615(a)(3).

Cir. 1998) (citations omitted).   As with other courts around the country, courts in the Fourth Circuit have continued to recognize and demand such remedial focus.   *See e.g. Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267 (4th Cir. 2010); *Saunders v. Equifax Info. Servs., L.L.C.*, 469 F. Supp. 2d 343 (E.D. Va. 2007); *Barnette v. Brook Rd., Inc.*, 429 F. Supp. 2d 741 (E.D. Va. 2006)

For these and other purposes, Congress amended the FCRA in 1997 to expand its protections for employment consumer reports and add the provisions that are the subject of this action.   However, less than a year later, Congress again amended the FCRA, this time by way of the Consumer Reporting Employment Clarification Act of 1998.   Contrary to CEVA's assertion, the purpose of the amendment was not to "relax" or eliminate the trucking industry's compliance obligations, but rather to comport more practically with the industry's unique manner of hiring – accomplished most often by means other than in-person contact.   As Representative LeFalce explained:

> Since the companies providing employment screening for trucking firms seek applications in all parts of the country and communicate primarily by telephone, fax or mail, current FCRA requirements that disclosures and authorizations be made in person and in writing are inappropriate and burdensome. The legislation would add several narrowly crafted exceptions to FCRA that would permit— where employment applications are taken by phone, mail or electronically— greater flexibility in providing required disclosures and authorizations either by ''oral, written or electronic means'', and in permitting delivery of a credit report to an applicant within three days after an adverse employment decision.

1998 CR H10220, October 8, 1998.  The intended purpose of the statute did not change.   But the manner of communication did.  As one contemporaneous commentator explained,

> The trucking industry, in particular, with high turnover and a constant need to hire new drivers quickly, had developed hiring procedures that were at direct odds with the procedures in the Amendments. Specifically, the trucking industry developed a process whereby applicants may apply by telephone. Under the Amendments, even when an application is not submitted in person, the prior disclosure and authorization must be made in writing. The 1998 Amendments drew a very narrow exception to this requirement, and now permit certain employers to provide the prior disclosure and obtain the prior authorization orally

14

or electronically if there has been no "in-person" contact before the consumer
report is procured.

Lynne B. Barr & Barbara J. Ellis, *The New FCRA: An Assessment of the First Year*, 54 Bus.

Law. 1343, 1349 (1999). And as before, the FCRA's remedial purpose continues to demand an

expansive and liberal view of an employer's obligations. The 1998 amendment was intended to

do nothing more as it relates to § 1681b(b)(2) than allow for basic consent disclosures to be

made other than in writing. Yet CEVA does not suggest that it makes its disclosures in that

manner. It ignores its obligation to make the disclosures required by § 1681b(b)(2)(B)

altogether. Such an interpretation ignores the collateral sections of the statute and the remedial

objectives of the FCRA. *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964-65 (6th Cir.

1998) ("We are additionally guided by the fact that the FCRA is to be liberally construed in

favor of the consumer, as well as the rule of statutory construction which requires us to read a

statutory provision in a manner consistent with the statute's other provisions.") (citations

omitted).

      **2.**    **The Plaintiff alleges that Defendants did not make the Disclosures provided
at § 1681b(b)(2)(B).**

Other than the summary assertion that a trucking employer may chose which provision

with which to comply, the CEVA Defendants make no attempt to argue their adequate

compliance with § 1681b(b)(2)(B). The Court should deny CEVA's Motion as to the Count I

merits argument and move to the next. However, out of an abundance of caution, Boyd is

compelled to address the merits of his FAC.

On or about March 21, 2011, Boyd applied for a commercial truck driver position with

CEVA by completing an online application. (ECF No. 16, ¶ 20). The same day, CEVA engaged

HireRight Solutions, Inc. ("HireRight"), a consumer reporting agency as defined by 15 U.S.C. §

1681a, to provide Boyd's DAC report. (ECF No. 16, ¶ 22). On or about March 31, 2011, HireRight provided CEVA with Boyd's DAC report, which included dates for Boyd's previous employment. (ECF No. 16, ¶ 23). Prior to procuring Boyd's consumer report, CEVA failed to provide him with a summary of his rights under 15 U.S.C., § 1681m(a)(3)[12]. (ECF No. 16, ¶ 25. These rights include the right to obtain free copy of a consumer report from the consumer reporting agency within sixty (60) days, as well as the right to dispute the accuracy or completeness of any information in the consumer report directly with the consumer reporting agency. *Id.*

After a positive interview with CEVA, Boyd was shocked when his application was later rejected due to his DAC report. Boyd learned that he was rejected because his employment history submitted in his online application did not match the history contained in his DAC report. Simply put, CEVA deemed his a liar and reject his application for further consideration. (ECF No. 16, ¶ 27). In the course of doing so, and in violation of 15 U.S.C. § 1681b(b)(3)(B)(i), CEVA failed to provide Boyd, within 3 days of denying his application, specific notices intended to alert him of substantive and procedural rights under the FCRA.

The FCRA treats the disclosure of these rights as a condition precedent to a consumer's authorization. *See generally Lagrassa v. Gaughen,* 2011 U.S. Dist. LEXIS 34323 (M.D. Pa. Mar. 30, 2011). Assuming CEVA's "Exhibit A" to its Motion represents its FCRA disclosure to online applicants like Boyd, it clearly does not conform to § 1681b(b)(2)(B). The disclosure states:

> [I] have the right to make a request to the company furnishing this information, upon proper identification, to request the nature and substance of all information in its files on me at the time of my request, including the sources of information; and the recipients of any reports on me which they have previously furnished within the two year period preceding my request. (ECF No. 27-1).

---

[12] Later recodified under the Dodd-Frank Act as § 1681m(a)(4).

For purposes of § 1681b(b)(2)(B), this language is meaningless.  It does not inform Boyd of his right to receive a *free* copy of the report from the CRA *within 60 days*,[13] or his right to dispute the accuracy and completeness of the report.  Assuming, *arguendo*, that subsection (A)(i) applied to Boyd, CEVA still violated §1681b. The following chart summarizes the relevant FCRA requirements:

| FCRA Provision | Notice Requirements | Adverse Action Requirements |
|---|---|---|
| **§ 1681b(b)(2)(A) (In-Person Applicants for All Industries)** | Only written notice a consumer report may be obtained for employment purposes.<br><br>Consumer authorization must in writing. | ***Before*** taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer: (i) a copy of the report; and (ii) a copy of the FTC Summary of Rights |
| **§ 1681b(b)(2)(B) (Online Trucking Applicants)** | Oral, written, or electronic notice that a consumer report may be obtained for employment purposes, and disclosure of the consumer's rights to: (i) receive a free copy of the report within 60 days from the CRA, and (ii) dispute the contents of the report directly with the CRA. | ***After*** taking adverse action provide within three (3) days oral, written or electronic notice: (i) that adverse has been taken based in part or in whole on report, (ii) names, address, telephone number, of CRA that furnished report, (iii) CRA did not take the adverse action against consumer, and (iv) consumer may request free copy of report and dispute the completeness or accuracy of the report.<br><br>If requested, the employer must send copy of report within three (3) days of consumer request together with a copy of the FTC Summary of Rights. |

Simply put, CEVA cherry-picks certain FCRA requirements, regardless of the application method.  For example, CEVA argues that the "clear and conspicuous" notice requirements of § 1681b(b)(2)(A) apply to Boyd, despite his status as a non-in-person applicant.  Yet CEVA does not even follow the pre-adverse action notice requirements for in-person applicants.  *See* § 1681b(b)(3)(A).  This section requires that CEVA provide Boyd with a copy of his consumer report before denying him employment, together with a written Summary of Rights prepared by

---

[13] After 60 days, the report is no longer free.  *See* 15 U.S.C. § 1681j.

the FTC. *Id*. CEVA's "cross provision" application of notice and adverse action is erroneous, and CEVA has violated the statute regardless of which provision is applied.

### 3. A determination of "willfulness" is not appropriate at this stage of the proceedings.

CEVA offers no meaningful support for the proposition that Boyd has failed to allege a willful violation of 15 U.S.C. § 1681b. Indeed, CEVA's contention that its interpretation of the FCRA is "objectively reasonable" is premature at the 12(c) posture. Despite CEVA's intimations otherwise, courts do not uniformly decide "willfulness" at the pleadings stage. *See Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626, at *36 (D. Md. Jan. 25, 2012); *but cf. Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532 (E.D. Pa. 2012). CEVA's reliance on *Safeco* and *Dreher* is misplaced, as those courts were operating under a summary judgment standard of review. Here, the proper standard of review is identical to the standard for motions to dismiss under Rule 12(b)(6). *See Tyree v. United States*, 2010 U.S. Dist. LEXIS 30722, at *5 (E.D. Va. Mar. 30, 2010). CEVA's Motion tests the sufficiency of the ***complaint***, not the reasonableness of its statutory interpretation. *See Korman v. Walking Co.*, 503 F. Supp. 2d 755, 761 (E.D. Pa. 2007) *citing Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Rather than burden this Court with unnecessary content, Boyd presents this cogent explanation from Judge Chasanow in the following extended quotation from the *Domino's* opinion demonstrating beyond question why Defendants' Motion cannot be sustained:

> In its final argument, Domino's maintains that, even if the BIIC form did violate the FCRA, its interpretation of the statute's disclosure and authorization requirements "was, at a minimum, not objectively unreasonable."….
>
> The Supreme Court has held that a defendant does not willfully violate the FCRA "unless the [challenged] action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law

substantially greater than the risk associated with a reading that was merely careless." *Safeco,* 551 U.S. at 69. That is, unless the defendant's interpretation of the statute is objectively unreasonable, a plaintiff will be unable to show that the defendant willfully violated the FCRA. "Where the reading has 'a foundation in the statutory text ... and a sufficiently convincing justification,' " the interpretation is not objectively unreasonable, even if the reviewing court disagrees with it. *Smith,* 711 F.Supp.2d at 434 (quoting *Safeco,* 551 U.S. at 69). Domino's clings to this language, asserting that its inclusion of the liability release in the BIIC form resulted from a reasonable reading of § 1681b(b)(2). The company's reliance on *Safeco,* however, is misplaced for two reasons.

First, the procedural posture of the *Safeco* case differed in a critical manner from the present action. "[T]he Supreme Court [in *Safeco* ] was operating under a summary judgment standard of review. It found no genuine issue of material fact as to whether the defendant's interpretation of the statute—albeit erroneous—was objectively unreasonable." *Id.* at 436. In this case, however, a motion to dismiss is pending, and discovery has not yet begun. Thus, at present, there is no evidence that Domino's actually adopted the interpretation of § 1681b(b)(2) that it proposes here. *See Gillespie v. Equifax Info. Servs.,* No. 05 C 138, 2008 WL 4316950, at *7 (N.D.Ill. Sept. 15, 2008) (denying a motion for summary judgment where, among other reasons, a defendant had not offered evidence that it "actually adopted a particular construction" of the relevant statutory section). On similar facts, numerous courts have declined to examine the reasonableness of a defendant's statutory interpretation when ruling on motions to dismiss. *See, e.g., id.* at 436–37; *Korman v. Walking Co.,* 503 F.Supp.2d 755, 761 (E.D.Pa.2007) (noting that, "at the motion to dismiss stage, the Court's only role is to determine" whether the complaint sufficiently alleges willfulness (citing *Jordan v. Fox, Rothschild, O'Brien, & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994))).[FN18]

FN18. Indeed, the few courts that have considered the matter when evaluating a motion to dismiss have offered no justification for doing so. *See, e.g., King v. MovieTickets.com, Inc.,* 555 F.Supp.2d 1339, 1341–42 (S.D.Fla.2008).

Second, even if it were appropriate to reach this issue on a 12(b)(6) motion, Domino's would not prevail. Unlike in *Safeco,* where the FCRA provision at issue was "less-than-pellucid," 551 U.S. at 70, the text at issue here appears to have "a plain and clearly ascertainable meaning," *Smith,* 711 F.Supp.2d at 436. *See Edwards v. Toys "R" Us,* 527 F.Supp.2d 1197, 1209 (C.D.Cal.2007) ("This case presents a different situation than *Safeco* because [the FCRA provision at issue] is not ambiguous or susceptible of conflicting interpretations.").[FN19] Domino's has pointed to no authority that would lead to a contrary conclusion.

FN19. The remaining cases on which Domino's relies in support of this argument are distinguishable for the same reason. *See, e.g., Murray v. New Cingular Wireless Servs., Inc.,* 523 F.3d 719, 725–26 (7th Cir.2008) (concluding that a defendant did not willfully violate the FCRA's "clear and conspicuous"

requirement when using six-point font in a disclosure document because, among other things, the meaning of "conspicuous" was "not 'clear' "); *Long v. Tommy Hilfiger U.S.A., Inc.,* No. 09–1701, 2011 WL 635271, at *5–7 (W.D.Pa. Feb. 11, 2011) (finding that statutory ambiguity, along with a "dearth of guidance" from agency or judicial authorities, rendered a defendant's interpretation "objectively reasonable"), *aff'd,* ——— F.3d ———, 2012 WL 180874 (3d Cir. Jan. 24, 2012).

At bottom, the basis of the company's argument is that "the paucity of [judicial] authority on the [disputed] statutory provision" precludes the conclusion that the company acted in an objectively unreasonable manner. (ECF No. 24, at 12).[FN20] This argument is unpersuasive because it ignores the guidance provided within the statutory provision itself. Where "the text of [the] statute is clear and open to only one reasonable interpretation ... a dearth of guidance does not render [a] defendant's readings plausible." *Follman v. Hospitality Plus of Carpentersville, Inc.,* 532 F.Supp.2d 960, 964 (N.D.Ill.2007); *Ramirez v. MGM Mirage, Inc.,* 524 F.Supp.2d 1226, 1235 (D.Nev.2007) (quoting *Follman,* 532 F.Supp.2d at 964). Because the plain language of § 1681b(b)(2) indicates that inclusion of a liability release in a disclosure form violates the FCRA's disclosure and authorization requirements, Domino's fails to show that its interpretation of this section was "not objectively unreasonable." (ECF No. 22, at 21). Dismissal of counts two and three on this ground is, therefore, improper.

FN20. In its reply, Domino's states that the court in *Reardon* found the same arguments now advanced by Plaintiffs "novel" and " 'the legal issue with respect to the requirements of the statute' ... 'close.' " (ECF No. 24, at 16 (quoting 2011 WL 1628041, at *7)). Domino's, however, mischaracterizes the *Reardon* opinion in making this assertion. The *Reardon* court made these statements with regard to issues unrelated to those disputed here.

*Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626, *34-39 (D. Md. Jan. 25, 2012).

Boyd's FAC alleges that CEVA knowingly or recklessly violated the FCRA by repeatedly failing to give requisite notices to applicants and failing to make proper disclosures of adverse action to applicants for many years.  (ECF No. 16, ¶¶ 30-34); *see Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626, *15-16 (D. Md. Jan. 25, 2012).  Because CEVA's defenses to willfulness are premature, its Motion must be denied.

Even assuming, *arguendo*, that it were appropriate at this stage to determine whether CEVA's interpretation was objectively reasonable, CEVA still would not prevail.  "In interpreting the plain language of a statute, [courts] give the terms their ordinary, contemporary,

[and] common meaning, absent an indication Congress intended [them] to bear some different import." *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011).   Unlike in *Safeco*, where the FCRA provision at issue was "less-than-pellucid," the provisions at issue here are unambiguous. *Id.* at *37 (internal citations omitted).   As demonstrated above, CEVA's reliance on §§ 1681b(b)(2)(*A*) and 1681b(b)(3)(*A*) is clearly misplaced.   These provisions plainly provide that applications by "computer" are subject to notice and adverse action requirements set forth in §§ 1681(b)(2)(***B***) and 1681b(b)(3)(***B***). *See infra*.   Courts have repeatedly found that where the statutory language is unambiguous, a general defense that the company's interpretation was objectively reasonable will not suffice. *See Korman*, 503 F. Supp. 2d at 761 ("Defendant's reading of the statute has no basis in the statutory text; the statute is clear."); *Buechler v. Keyco, Inc.*, 2010 U.S. Dist. LEXIS 40197, *8 (D. Md. April 22, 2010) ("Unlike the provision of FCRA at issue in *Safeco*, the provision Keyco allegedly violated is unambiguous."); *see also Gillespie v. Equifax Info. Servs., LLC*, 2008 U.S. Dist. LEXIS 85150, at *17-18 (N.D. Ill. Sept. 15, 2008) (The mere absence of appellate or regulatory authority does not justify an objectively unreasonable interpretation where statute's language is clear.)

CEVA's violations of unambiguous provisions of the FCRA prevent it from establishing any objectively reasonable interpretation.   And while CEVA attempts to weave a complicated explanation for its interpretation of the FCRA, it remains patently erroneous.

## C.   THE FAC PLAUSABLY ALLEGES THAT CEVA FREIGHT, CEVA LOGISTICS, CEVA LOGISTICS NORTH AMERICA AND CEVA LOGISTICS, U.S., INC. ARE ALL PROPER DEFENDANTS AT THIS JUNCTURE.

CEVA's alternate challenge to the case seeks the dismissal as to CEVA Freight, LLC. and CEVA Logistics, LLC. The basis for this motion is not an argued deficiency or generality in Boyd's substantive allegations, or even an asserted theoretical defect in the logic of such

allegations.  Instead, CEVA Defendants ask the Court to reject Boyd's allegations because they simply disagree with their correctness.  Defendants' explanation for their position is telling. CEVA's argument requires the Court to conclude that Boyd's factual allegations are simply untrue – the light was not red, it was green. CEVA's "Rule 12(c)/12(b)(6)" motion even relies for its support on CEVA's own Answer and summary judgment (or Rule 12(c)?) affidavit attached to the Answer.  CEVA asserts:

> Plaintiff's Amended Complaint includes three substantial and dispositive factual inaccuracies that are central to the Amended Complaint's allegations and contradicted by unambiguous documents. First, Plaintiff never applied for a position with CEVA Freight or CEVA Logistics. Plaintiff applied for employment with CEVA Logistics, U.S. (See Answer ¶ 8; Answer Ex. A). Second, because Plaintiff never applied to CEVA Freight and CEVA Logistics, those entities necessarily never procured a background check on Plaintiff and never took adverse action against him based on his background check.

(ECF No. 27, p 3).

Boyd addresses CEVA's claim below in reciting again the detailed allegations in the FAC supporting the multi-entity FCRA "user" claim. However, before doing so, Plaintiff asks the Court to consider what Defendants are arguing.  For example, the FAC alleges that CEVA Freight, LLC is the only CEVA entity doing business in Virginia.  (ECF No. 16, ¶7).  And CEVA claimed in their unified Answer and present motion that CEVA Logistics US, Inc. was the only entity that expressly communicated with HireRight, to request and then receive Boyd's consumer report. (ECF No. 21, ¶¶ 21, 23) .  The "disclosure" CEVA produced and attached with their motion does not disclose to Boyd that CEVA Freight, CEVA Logistics US, Inc. or CEVA Logistics, LLC would procure or use his consumer report.  By CEVA's own admission, *one* of these entities actually obtained Boyd's report and *none* of these entities were disclosed in the proffered consent document.  Instead, CEVA's proffered disclosure lists a different name still, CEVA Logistic North America.

22

CEVA admits its "disclosure" refers *only* to CEVA Logistics North America, a non-existent fictitious entity.  To the extent CEVA claims that CEVA Logistics, U.S., Inc. is the only proper defendant, that entity provided absolutely *no* disclosure to Boyd.  Accepting CEVA's own arguments, CEVA's Motion must be dismissed.  Indeed, CEVA cannot have it ways, claiming on the one hand that only CEVA Logistics U.S., Inc. is a proper defendant, and admitting on the other that only a fictitious entity attempted to disclose to Boyd that he may be subject to a consumer report.

CEVA's website represents a blended compilation of material related to each of the CEVA Defendants.  Indeed, whether a consumer searches for any specific CEVA Defendant, he will inevitably be directed to www.cevalogistics.com.  There, consumers can review a litany of information about the CEVA Defendants, and submit an online application for employment.  Collectively, the CEVA Defendants provide a complicated explanation of their corporate relationship that only strengthens Boyd's claims at this early stage of the litigation.

Boyd's allegations must remain the central focus of a motion under FED. R. CIV. P. 12(c).[14]  Here, Boyd alleges that all CEVA Defendants operate collectively under one human resource umbrella, using uniform policies and procedures to use consumer report for employment decisions.  (ECF No. 16, ¶ 19).   In CEVA's own words, "CEVA Logistics companies have their own separate identities but in this web site we may sometimes use 'CEVA Logistics', 'Group', 'we' or 'us' when we refer to CEVA Logistics companies in general or where no useful purpose is served by identifying any particular CEVA Logistics company." *See* http://www.cevalogistics.com/en-US/pages/termsandconditions.aspx (last visited September 16, 2013).  Such is the case when soliciting job applicants, where CEVA finds no useful purpose to

---

[14] Plaintiff does not repeat, but does by reference seek to incorporate, the substantial and detailed facts alleged in these regards in the FAC.  (ECF No. 16, ¶¶ 5-19).

distinguish between the various CEVA Defendants - until sued.   (ECF No. 16, ¶ 17).   When

entities operate collectively, each is liable for violations of the FCRA.   *See Ross v. Res-Care,*

*Inc., et al.*, Civ. No. 3:11-CV-83-H (W.D. Ky. July 30, 2012) (Heyburn, J.) (Attached hereto as

Exhibit A).   Facing a similar argument by a defendant asserting a "hands off" defense in a more

stringent Rule 56 posture after the parties had conducted extensive discovery regarding the

corporate relationships between the defendants, the court noted,

> Although parent corporations are not generally liable for the acts of their
> subsidiaries, *United States v. Bestfoods*, 524 U.S. 51, 61 (1998), the question
> presented here is whether Res- Care's own actions and involvement in Res-Care
> Kansas's hiring practices are sufficient to hold it directly responsible for the
> claims Plaintiff asserts. To answer this question, the Court need not determine
> whether Res-Care *actually* made the decisions to request Plaintiff's consumer
> report or deny him employment. It is only necessary to determine that a genuine
> dispute exists as to this material fact. The Court easily concludes that one does.
> Based on Plaintiff's factual allegations, a jury could conclude that Res-Care
> promulgates and controls the hiring practices of Res-Care Kansas and is the party
> responsible for both procuring Plaintiff's consumer report and denying him
> employment. Therefore, Res-Care is a proper defendant to Plaintiff's FCRA
> claims and should not be dismissed.

Moreover, Boyd named CEVA Freight, CEVA Logistics, CEVA Logistics North

America, CEVA Logistics and CEVA Logistics, U.S. Inc. as defendants as there is no apparent

singular entity in the CEVA corporate family that can claim compliance with 15 U.S.C. §

1681b(b)(1)(A).   This statutory certification and precondition required for an employer to legally

procure a consumer report for employment purposes states:

> (b) Conditions for furnishing and using consumer reports for employment
> purposes
>
> (1) Certification from user
>
> A consumer reporting agency may furnish a consumer report for employment
> purposes only if—
>
> (A) the person who obtains such report from the agency certifies to the agency
> that—

(i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and

(ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation.

The statute's reference to "Paragraph (2)" pertains to the disclosure requirements of 15 U.S.C. § 1681b(b)(2).  Similarly the reference "Paragraph (3)" pertains to the pre-adverse and adverse action notices under 15 U.S.C. § 1681b(b)(3).   In effort to relieve the entire CEVA corpus of liability, CEVA attaches to their Motion *CEVA Logistics North America's* "Disclosure and Release" provided to Boyd during the application process.  (ECF No. 27-1). With the same breath, CEVA argues that since Boyd only applied for employment with CEVA Logistics, U.S. Inc., CEVA Freight and CEVA Logistics are absolved of the compliance requirements in § 1681b. (ECF No. 27, pp. 6-7).   CEVA ignores that this "Disclosure and Release" purports to come from another CEVA entity altogether.  Glaringly, CEVA Logistics, U.S., Inc. provided absolutely *no* disclosure to Boyd.  Moreover, it strains credulity to suggest that CEVA Logistics North America - *a fake entity* - certified compliance with the FCRA under § 1681b(b)(1)(A).

More concerning, Boyd alleges that he did not receive the proper notifications under "Paragraph (2)" or proper adverse action notices under "Paragraph (3)" as referenced in § 1681b(b)(1)(A) as a precondition to an employer actually receiving a report.  It is unknown if CEVA Freight, CEVA Logistics, CEVA Logistics North America, CEVA Logistics or CEVA Logistics, U.S. Inc. certified to HireRight Solutions Inc., the reporting agency in question, that consumers would be provided the proper notices referenced above.  The "Disclosure and Release" implies that only CEVA Logistics North America legally obtained Boyd's consumer report under § 1681b(b)(1)(A).  CEVA's reliance on a disclosure purportedly authorizing a

fictitious entity to procure reports at a minimum demonstrates a general recklessness disregard for applicants' rights that is carried throughout the CEVA Defendants' use of such reports to make employment decisions.  It would be premature at this juncture to dismiss one or more CEVA Defendants prior to engaging in discovery to ferret through the corporate structure.  Indeed, CEVA's arguments suggest that no legitimate CEVA entity ever seeks authorization to procure consumer reports.

CEVA also dwells deeply under what appears to be a simplistic veil-piercing analysis, arguing simply – we are separate business entities.  But this presumes that Boyd has joined the defendants merely under some theory that one entity is responsible for the acts or obligations of another.  Boyd does not make such a claim.  Instead, he alleges that the CEVA Defendants operate with a uniform human resource function.  This is reinforced by the facts.  For example, to obtain a job at CEVA Freight, Boyd signed a form that stated "CEVA Logistics North America."  Then, according to Defendants, CEVA Logistics US, Inc. procured his consumer report, yet according to Boyd, this was done by CEVA Logistics.  But there is sufficient factual basis at this stage (if by summary judgment) and definitely sufficient detail in the FAC (if by Rule 12(c)) to accept as plausible the possibility that these entities are integrated.

The FCRA text also provides a basis to reject Defendants' motion.  Section 1681b(b) does not simply govern the entity that "procured" a consumer report, but also any entity that "caused to be procured" a report.  "An agent of a party with a 'permissible purpose' may obtain a consumer report where he is acting on behalf of his principal for that purpose."  Federal Trade Commission, *Forty Years of Experience with the Fair Credit Reporting Act*, www.ftc.gov/os/2011/07/110720fcrareport.pdf (last visited September 17, 2013).  The FAC alleges that Boyd applied for a job with CEVA Freight, and that while CEVA Freight may not

have actively procured the report, it may have "caused [the report] to be procured."  Section 1681b(b)(2) contemplates responsibility for both the frontline procurement and the "caused to be procured" parties.

Further, if more than one of the CEVA entities shared a consumer report in order to make a hiring decision, they were each a user of that consumer report.  *Id.* at 10.  In this case, applying the FTC staff commentary on point, it is immaterial which CEVA entity procured the consumer report, which CEVA entity was authorized to procure the consumer report, and which CEVA entity used the consumer report to make a hiring decision.   According to the FTC, an entity that shares consumer reports with others who are jointly involved in a decision based on a consumer report, each entity is considered a user.[15]  In this case, all of the CEVA entities – even the fake one – can be labeled as a user because not only did they share HR functions, they also shared the consumer report to make a hiring decision.

Finally, even if basic "alter ego" analysis were applied, the FAC still satisfies this modest threshold.  Plaintiff alleged:  The Defendants operate together in the "use" of consumer reports.  By Defendants' admission, all CEVA entities are controlled entirely by a single entity – CEVA Logistics.   The website admits and the FAC alleges that the CEVA entities have integrated management, finances and control.   Any separation of corporate structures is immaterial where the proper focus is on the procurement, use and sharing of consumer reports. CEVA may disagree with these allegations. If so, they should be sufficiently confident to raise this motion again after discovery by Rule 56. But certainly, CEVA's disagreement with the plain facts

---

[15] Prior to the publication of *40 Years*, the prior 1990 FTC staff commentary adopted an exception to the definition of CRA although it was found nowhere in the FCRA itself.  The FTC treated different entities that shared access to a consumer report for the purpose of making a lending decision to be "joint users."  In 2011, the FTC staff commentary eliminated the reference to "joint users," instead focusing on the purpose for which a report was provided.  If a report was procured by one entity, but shared with another entity for the purpose of making a decision based on the report, then both entities are users. Otherwise, an argument could be made that the entity that originally procured the report was converted into a CRA once it shared that report with a third party for the purpose of making a decision based on the report.

alleged in the FAC cannot be a sound basis for a Rule 12(c) motion to be granted.  Applying

useful, though not identical reasoning in federal corporate veil-piercing, the corporate form is not

a relevant inquiry at this stage of litigation.  *Thomas v. Peacock*, 39 F.3d 493, 500-502 (4th Cir.

1994). The Fourth Circuit in *Thomas* adopted the First Circuit's  "liberal veil-piercing standard":

> The general rule adopted in the federal cases is that "a corporate entity may be
> disregarded in the interests of public convenience, fairness and equity," [citing
> *Capital Telephone Co. v. FCC,* 498 F.2d 734, 738 (D.C.Cir.1974) ]. In applying
> this rule, <u>federal courts will look closely at the purpose of the federal statute to
> determine whether the statute places importance on the corporate form</u> [citations
> omitted], an inquiry that usually gives less respect to the corporate form than does
> the strict common law alter ego doctrine.... (Emphasis added).

*Thomas*, 39 F.3d 503-304 citing *Alman v. Danin,* 801 F.2d 1, 3-4 (1st Cir.1986) and *Town of*

*Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir. 1981).  The federal threshold for finding one

entity an *alter ego* of another includes circumstances in which "adherence to the corporate fiction

[would …] lead to an evasion of legal obligations."  *Thomas*, 39 F.3d 504 (citations omitted).  In

applying the federal standard adopted in *Thomas*, this Court cannot reasonably conclude that the

FCRA's purpose "places importance on the corporate form."  To the contrary, the FCRA

expressly cautions that corporate form is irrelevant and that the use of corporate associations and

structures to avoid its application are prohibited.

The Amended Complaint in fact provides greater detail and specificity than has been held

necessary under *Twombly/Iqbal* in pleading alter ego/veil piercing.  For example, In *The Flexible*

*Benefits Council v. Feltman*, 1:08cv371, 2008 WL 2465457, *7  (E.D. Va. 2008), Judge Cacheris

rejected a corporate veil Rule 12(b)(6) argument against a Complaint that principally alleged,

"Upon information and belief, all of the above actions were performed in concert with

Defendants Feltman and ECFC, Ltd., as well as with other associates currently unknown to

plaintiff."  *Feltman* Complaint, ¶50.  Similar conclusions were reached in cases with varying

degrees of pleading detail.  *See e.g. Osgood v. Midwest Parking Solutions*, 2009 WL 4825192 (E.D. Mo. Dec. 11, 2009) (finding plaintiffs' allegations of the individual's control and dominance of the corporate entity sufficient to survive a motion to dismiss); *Maganallez v. Hilltop Lending Corp*., 505 F. Supp.2d 594 (N.D. Cal. 2007) (denying motion to dismiss alter ego claim against individual who controlled corporate defendant).  Indeed, in *Maganallez,* the court noted that an allegation "that one of the major shareholders has 'essentially full operational control' over [the defendant] during a specific period was sufficient to justify allowing plaintiffs to proceed on an alter ego theory."  *Id*. at 608 (citing *In re Napster, Inc. Copyright Litig*., 354 F. Supp.2d 1113, 1122 (N.D. Cal. 2005)).  In *Oregon Laborers-Employers Health & Welfare Trust Fund v. All State Industrial, Marine Cleaning, Inc*., 850 F. Supp. 905 (D. Or. 1994), the plaintiffs alleged merely "that Allstate and another defendant shared the same corporate offices, used the same employees, performed the same type of work, and interchanged vehicles, real property and assets."  This was sufficient to state a claim for alter ego liability, as Plaintiffs' allegations are here.  *See also CitiMortgage, Inc. v. NL, Inc*., 2010 WL 1610411 (E.D.Mo. April 21, 2010); *McWilliams Ballard, Inc. v. Level 2 Development*, --- F.Supp.2d ----, 2010 WL 1068917 (D.D.C. March 24, 2010) (Applying Virginia common law); *Trabucco v. Intesa Sanpaolo, S.P.A.*, --- F.Supp.2d ----, 2010 WL 991621, *7-8 (S.D.N.Y. March 19, 2010).

The "issue of corporate disregard is generally one submitted to the jury."  *American Protein Corp. v. A.B. Volvo,* 844 F2d 56, 59 (2nd Cir.), cert denied, 488 U.S. 852 (1988).  See also *Luckett v. Bethlehem Steel Corp.,* 618 F2d 1373, 1379 (10th Cir 1980) (whether to disregard the corporate entity "is a fact question which should ordinarily be submitted to the jury"); *Key v. Liquid Energy Corp.,* 906 F2d 500, 503 (10th Cir 1990) ("whether a separate corporate structure was adopted for the purpose of fraud or illegality is ordinarily a fact question for the jury"); *FMC*

*Finance Corp. v. Murphree,* 632 F2d 413, 421 n 5 (5th Cir 1980) ("this Court holds that the issue of corporate entity disregard is one for the jury").

## IV.   CONCLUSION

Based upon the foregoing argument, Boyd respectfully requests that the Court deny CEVA's Motion for Partial Judgment on the Pleadings.

Respectfully submitted,

CONSUMER LITIGATION ASSOCIATES, P.C.

/s/ Leonard A. Bennett
Leonard A. Bennett (VA No. 27523)
Susan M. Rotkis     (VA No. 40693)
763 J. Clyde Morris Blvd.
Suite 1-A
Newport News, Virginia 23601
Telephone:     (757) 930-3660
Facsimile:     (757) 930-3662
Email:          lenbennett@clalegal.com
                srotkis@clalegal.com

STUMPHAUZER | O'TOOLE

Matthew A. Dooley (OH No. 0081482)
Anthony R. Pecora (OH No. 0069660)
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone:     (440) 930-4001
Facsimile:     (440) 934-7208
Email:          mdooley@sheffieldlaw.com
                apecora@sheffieldlaw.com
*Counsel for Andre Boyd and the putative Class*

## **CERTIFICATE OF SERVICE**

This will certify that a copy of the foregoing Plaintiff's Opposition to Defendants' Motion for Partial Judgment on the Pleadings was filed this 17th day of September, 2013. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via electronic mail.

/s/ Leonard A. Bennett
*Counsel for Andre Boyd and the putative Class*