## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**ANDRE LAMONT BOYD, on behalf of**
**Himself and all others similarly situated,**

     **Plaintiff,**

                                            **Civil Action No. 3:13cv150**

**v.**

**CEVA FREIGHT, LLC,**

**CEVA LOGISTICS, LLC,**

**CEVA LOGISTICS NORTH AMERICA,**

**CEVA LOGISTICS, U.S. INC.,**

**and**

**JOHN DOE, INC.**

     **Defendants.**

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

CEVA Freight, LLC ("CEVA Freight"), CEVA Logistics, LLC ("CEVA Logistics") and CEVA Logistics U.S. Inc. ("CEVA Logistics U.S.") (collectively "Defendants"), submit this Reply Memorandum in Support of their Motion for Partial Judgment on the Pleadings. For the reasons in their opening brief and below, Defendants request the Court dismiss Count I of the Amended Complaint in its entirety and Count II as to CEVA Freight and CEVA Logistics.

### INTRODUCTION

Plaintiff's lawsuit is ripe for judgment on the pleadings in several material respects. First, the Court should dismiss Plaintiff's claims in their entirety against CEVA Freight and CEVA Logistics because Plaintiff never applied to those entities and those entities owed Plaintiff no obligations under the Fair Credit Reporting Act ("FCRA"). In Plaintiff's opposition

memorandum, he attempts to manufacture a dispute of fact on this issue through *argument*. This argument, however, mischaracterizes his pleadings, invents allegations found nowhere in the Amended Complaint, and seeks to avoid dismissal based purely on speculation. Plaintiff acknowledges *he has no idea to which of the defendants he applied* and, in turn, which defendant owed him any FCRA obligations. The Federal Rules do not sanction lawsuits with no factual underpinning in hopes that the plaintiff may uncover some speculative wrongdoing in discovery.

Second, Count I should be dismissed against all Defendants because Plaintiff received a proper disclosure under the FCRA in compliance with 15 U.S.C. § 1681b(b)(2). Plaintiff argues in his opposition brief that CEVA Logistics U.S. was not entitled to comply with the FCRA by providing Plaintiff the disclosure that it did. This *argument*, however, is unsupported by *authority* to support his position. As demonstrated below, the disclosure form CEVA Logistics U.S. provided to Plaintiff clearly and conspicuously disclosed to Plaintiff that he was going to be subject to a background check in a manner that complied with the FCRA.

Third, even if the Court were to conclude that CEVA Logistics U.S.' disclosure form did not comply with the FCRA's technical requirements, the Court should dismiss the willfulness component of Count I. Plaintiff cites no authority indicating that any of the defendants failed to act objectively reasonably in providing Plaintiff with a disclosure form regarding the procurement of his background check. Willfulness is question properly and frequently resolved at the pleadings stage and Defendants have not acted willfully as a matter of law.

<u>**ARGUMENT**</u>

1. <u>**CEVA Freight and CEVA Logistics had no Obligation to Provide any FCRA Disclosure to Plaintiff and the Claims Against them Should be Dismissed**</u>

In Defendants' opening brief, they demonstrated that Plaintiff's claims against CEVA Freight and CEVA Logistics should be dismissed in their entirety because Plaintiff failed to

allege that those entities owed any FCRA obligations to him. In response, Plaintiff raises both procedural and substantive arguments as to why the claims against those entities should not be dismissed. These arguments should be rejected. The Amended Complaint is utterly devoid of any factual allegations imputing any FCRA obligations to CEVA Freight and CEVA Logistics with respect to Plaintiff. In fact, he admits that he has no knowledge whatsoever of whether those entities were involved in his job application that is the subject of this lawsuit. Plaintiff's rank speculation is not sufficient to nudge his claims against those entities from conceivable to plausible, as required by the Federal Rules and the associated case law.

A. Defendants' Answer is Properly Before the Court and does not Conflict with Plaintiff's Complaint

From a procedural perspective, Plaintiff is incorrect in his assertion that Defendants have improperly relied on evidence outside of the pleadings in seeking judgment on the pleadings. In Defendants' Answer, it stated that "Boyd applied for employment with CEVA Logistics U.S. and it was CEVA Logistics U.S. that requested a background check on Boyd in connection with that application." (Answer ¶ 8). When considering a motion for judgment on the pleadings, "[t]he factual allegations of the answer are taken as true to the extent 'they have not been denied or do not conflict with the complaint.'" *Colonial Trading, LLC v. Basset Furniture Indus.*, 5:09cv43, 2010 U.S. Dist. LEXIS 133401, at *6 (W.D.N.C. Dec. 7, 2010) (citations omitted).

Here, Plaintiff's Amended Complaint expressly acknowledges that he cannot deny or assert allegations that conflict with Defendants' Answer. According to Plaintiff:

- "At the time that Plaintiff applied, and even today, *he did not know the technical identity of the specific CEVA entity with whom he was applying*." (Am. Compl. ¶ 21) (emphasis added); and

- "At the time that HireRight provided such report, and even today, *[Boyd] did not know the technical identity of the specific CEVA entity to whom he was applying*." (Am. Compl. ¶ 23) (emphasis added).

Defendants' Answer with respect to the entity to whom Plaintiff applied does not "dispute facts by way of argument or documents outside the pleadings," as Plaintiff contends.  (Mem. Opp'n, at 5).   Nor does it require the Court to weigh competing facts or make judgments regarding truthfulness at this stage of the litigation.  Defendants' Answer fills a void regarding the entity to which Plaintiff applied – a void left by Plaintiff's Amended Complaint and which Plaintiff acknowledges he cannot fill.  The Court should dismiss the claims against CEVA Freight and CEVA Logistics because Plaintiff acknowledges he cannot dispute the fact that these were not the entities to which Plaintiff applied, were not the entities that procured or caused to be procured Plaintiff's consumer report, and owed him no obligations under the FCRA.[1]

B.  <u>Plaintiff's Highly Speculative Arguments Cannot Rescue his Amended Complaint</u>

Plaintiff acknowledges that he knows of no facts to dispute the conclusion that he only applied for employment with CEVA Logistics U.S. and that entity is the only entity that ran a background check on him.  Nonetheless, Plaintiff attempts to avoid judgment with layer upon layer of speculation insufficient to satisfy the pleading standards of *Iqbal* and *Twombly*. Moreover, Plaintiff makes *arguments* in his opposition brief that have no foundation in the "facts" alleged in his Amended Complaint.  Plaintiff's claims against CEVA Freight and CEVA Logistics should be dismissed.

i.   <u>Plaintiff's Multi-Entity User Claim is a Speculative Legal Conclusion with no Factual Underpinning</u>

Plaintiff first argues that the Court should not dismiss his claims against CEVA Freight and CEVA Logistics because he has alleged that all of the defendants are "users" of consumer

---

[1] Plaintiff spends substantial time in his brief arguing that the Court should not consider the undisputed document attached to Defendants' Answer.  While this document should be properly considered, consideration of this document is not necessary to dismiss Plaintiff's Amended Complaint as to CEVA Freight and CEVA Logistics.  The Answer itself provides undisputed grounds to dismiss those entities.

reports by dint of their shared website  (Mem. Opp'n, at 23).   Not only are these allegations conclusory legal assertions based on speculation that do not pass muster under *Iqbal* and *Twombly*, but there are no allegations whatsoever in the Amended Complaint claiming that those supposed "joint users" had any interaction with Plaintiff specifically.

Under the familiar standards established by the Supreme Court in *Iqbal* and *Twombly*, "the Court need not accept the complainant's legal conclusions or any other unreasonable or unwarranted arguments as true."  *Velocity Micro v. J.A.Z. Mktg.*, No. 3:11cv473, 2012 U.S. Dist. LEXIS 102179, at *10 (E.D. Va. July 23, 2012) (Gibney, J.) (citing *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).  "A complaint containing facts that are merely 'consistent with' a defendant's liability 'stops short of the line between possibility and plausibility of entitle[ment] to relief.'"  *Id.* at *11 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 557 (2007)).  "'[T]he pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'"  *Twombly*, 550 U.S. at 555 (citations omitted).  Conclusory or speculative allegations are not enough to defeat a motion for judgment on the pleadings.  *See Painter's Mill Grille, LLC v. Brown,* 716 F.3d 342, 350 (4th Cir. 2013).

Plaintiff's "multi-entity user" theory is the precise type of allegation that cannot, as a matter of law, withstand a motion for judgment on the pleadings.   According to Plaintiff, Defendants have a website that informs visitors that Defendants have "their own separate identities."  (Am. Compl. ¶ 17).   Nonetheless, the website sometimes refers to Defendants collectively.  (*Id.*).  Based on this allegation, Plaintiff alleges vaguely on **"information and belief**" that Defendants operate with a single Human Resources department and are "one human resources 'user' of consumer reports."  (Am. Compl. ¶ 19).  These allegations represent the entirety of Plaintiff's allegations conceivably pertaining to CEVA Freight and CEVA Logistics.

Plaintiff fails to allege *one single fact* to support the conclusion that when *one defendant uses a consumer report, the use of that consumer report should be imputed to all defendants*. Rather, Plaintiff bases his "multi-entity user" theory entirely on speculation stemming from a collective website *that explicitly informs users that Defendants are separate entities*.  Plainly, Plaintiff's allegations that CEVA Freight and CEVA Logistics should be deemed to have owed him obligations under the FCRA by virtue of the fact that they have a joint website fall well short of the plausibility required under *Iqbal* and *Twombly*.  Moreover, even if Plaintiff had plausibly alleged that on certain occasions Defendants were joint users of a consumer report, Plaintiff fails to make any allegation that, with respect to *him specifically*, CEVA Freight or CEVA Logistics used his consumer report. Plaintiff's vague allegations of joint use are insufficient to sustain a claim, without more, that Defendants jointly used his specific background check or that CEVA Freight and CEVA Logistics were involved in any way with Plaintiff's application.

Courts routinely dismiss claims similar to Plaintiff's at the pleadings stage.  In *Canterbury v. J.P. Morgan Mortg. Acquisition Corp.*, No. 3:10cv54, 2010 U.S. Dist. LEXIS 134278, at *15-17 (W.D. Va. Dec. 20, 2010), for example, much of the plaintiff's claim turned on the issue of whether the defendant was the holder of the note related to her home loan.  The plaintiff alleged in the complaint, on "information and belief," that the defendant was not the note holder.  *Id.*  In its decision regarding the defendant's motion to dismiss, the court held that the allegations were "conclusory" and "not entitled to deference under *Iqbal* and *Twombly*."  *Id.*

Similarly, in *Long v. Postorivo*, C 07-01547, 2007 U.S. Dist. LEXIS 78386, at *4 (N.D. Cal. Oct. 11, 2007), two of the defendants sought judgment on the pleadings, arguing that they could not be held liable based on an "alter ego" theory of liability.  In that case, the plaintiffs based their alter ego allegations on their "information and belief" regarding the entities involved

6

and on allegations that the parties involved worked in "close coordination." The court dismissed their claims nonetheless. In its decision, the court held that "'[a]t the pleading stage, conclusory allegations that a corporate entity is the alter ego of the defendant are insufficient to survive a motion to dismiss.'" *Id.* at *4 (citations omitted). According to the court, it granted the motion for judgment on the pleadings because the plaintiffs' allegations were "only slightly beyond conclusory allegations" that the defendants were alter egos of each other. *Id.* at *5.

Courts frequently dismiss a claim at the pleadings stage when faced with allegations as vague and conclusory as those Plaintiff asserts here. *See, e.g., Adams v. Samuel I. White*, *P.C.*, No. 1:11cv323, 2011 U.S. Dist. LEXIS 98590, at *24 (E.D. Va. Aug. 31, 2011) (dismissing claims made upon information and belief because the complaint's "generalized conclusory statements" were not sufficient to support the claim); *Skillstorm, Inc. v. Elec. Data Sys., LLC,* 666 F. Supp. 2d 610, 620 (2009) (dismissing a defamation claim based on information and belief because the complaint was "devoid of the factual support demanded under *Twombly*"); *Key v. Dirty S. Custom Sound & Wheels*, No. 5:09-cv-32-D, 2009 U.S. Dist. LEXIS 46907, at *9-10 (E.D.N.C. June 3, 2009) (dismissing conclusory claims of conspiracy based on information and belief); *316, Inc. v. Maryland Casualty Co.*, 625 F. Supp. 2d 1179, 1186 (N.D. Fl. 2008) (dismissing a portion of the claim at the judgment on the pleading stage because the "[p]laintiff's factual allegations relating to general business practices were conclusory and speculative, unanchored to supporting facts beyond the boilerplate allegation 'upon information and belief'").

Plaintiff's multi-entity user allegation has no factual underpinning. It is a speculative legal conclusion masquerading as a factual claim.[2] Plaintiff has failed to plausibly allege that CEVA Freight or CEVA Logistics were involved in his application or owed him any duties.

---

[2] Plaintiff attempts to rescue his multi-entity user theory by citing to *Ross v. Res-Care, Inc.*, No. 3:11cv-83-H (W.D. Ky. July 30, 2012). But *Ross* is distinguishable. First, *Ross* involved a parent-subsidiary relationship in which the

ii.   Plaintiff's Arguments under 15 U.S.C. § 1681b(b)(1)(A) are Irrelevant to this Motion and Provide no Basis for its Denial

Plaintiff also argues that he named all of the currently-named defendants in this lawsuit because he does not believe there is any singular defendant that can claim compliance with 15 U.S.C. § 1681b(b)(1)(A).  (Mem. Opp'n, at 24-25).  This provision establishes conditions under which a consumer reporting agency may furnish a consumer report for employment purposes, including a requirement that certain certifications must be made to the consumer reporting agency regarding disclosures to be made to a job applicant.  *See* 15 U.S.C. § 1681b(b)(1)(A).

Plaintiff appears to argue that because the disclosure CEVA Logistics U.S. provided to Plaintiff listed the name CEVA Logistics North America, that must mean that CEVA Logistics U.S. provided no disclosure to Plaintiff.  In turn, according to Plaintiff's arguments, CEVA Freight and CEVA Logistics also did not provide a disclosure to Plaintiff.  Thus, according to Plaintiff, since none of the defendants provided a disclosure to him,[3] they cannot certify compliance with § 1681b(b)(1)(A). And because these entities allegedly cannot certify compliance with § 1681b(b)(1), they have acted in a reckless manner that somehow precludes the dismissal of CEVA Freight and CEVA Logistics.  (Mem. Opp'n, at 26).

Plaintiff's argument fails for multiple reasons.   First, § 1681b(b)(1)(A) is entirely irrelevant to question of whether CEVA Freight and CEVA Logistics procured or caused a

---

parent allegedly controlled the actions of the subsidiary.  This case involves no such relationship.  Second, in *Ross*, the plaintiff alleged that the parent *controlled* the application and interview process, ordered the plaintiff's consumer report, and took adverse employment action against the applicant.  Plaintiff has made no such allegations in the present case.  Plaintiff simply asserts speculative legal conclusions based on a shared website.  Third, in *Ross*, the plaintiff alleged that the entity to which he applied followed policies and procedures promulgated by the parent. Here, there is no allegation that CEVA Freight or CEVA Logistics control CEVA Logistics U.S.' policies.  Fourth, in *Ross*, the plaintiff alleged that the parent required the subsidiary to seek approval for employment decisions like the one involved in that case.  Here, there is no such allegation regarding the relationship between Defendants. Here, Plaintiff is unable to make any factual allegations akin to those involved in *Ross*.  Instead, Plaintiff is attempting to hold multiple defendants entirely unrelated to his application or consumer report liable based on allegations of a shared website and legal conclusions premised entirely on claims of "information and belief."
[3] This, of course, is incorrect, given the disclosure attached to Defendants' motion that Plaintiff received and signed.

consumer report to be procured on Plaintiff.  Plaintiff has made no factual allegations in his Amended Complaint that these entities had any involvement in his background check.

Second, Plaintiff's argument with respect to § 1681b(b)(1) is based on nothing more than rank speculation.  Plaintiff acknowledges that "[i]t is unknown if CEVA Freight, CEVA Logistics, CEVA Logistics North America, CEVA Logistics or CEVA Logistics, U.S. Inc. certified to HireRight Solutions Inc., the reporting agency in question, that consumers would be provided the proper notices referenced above."  (Mem. Opp'n, at 25).  What Plaintiff is effectively stating is that he knows nothing about the CEVA Freight and CEVA Logistics, yet, they should not be dismissed because he thinks there is a chance they may have done something wrong.  Such an argument provides no basis for the Court to deny Defendants' motion.

   iii. <u>Plaintiff's Remaining Arguments in Opposition are Based on Theories Found Nowhere in the Amended Complaint</u>

In addition to the arguments above, Plaintiff makes numerous other arguments in his opposition brief in an attempt to avoid judgment on the pleadings.  As discussed below, these additional arguments find no basis in the allegations in Amended Complaint.

Plaintiff first argues that an entity not only has a disclosure obligation under § 1681b(b)(2) when it procures a consumer report, but also when it causes a consumer report to be procured.  (Mem. Opp'n, at 26).  In turn, Plaintiff argues that the Amended Complaint "alleges that Boyd applied for a job with CEVA Freight, and that while CEVA Freight may not have actively procured [his] [] report, it may have 'caused [the report] to be procured.'"  This "allegation" is entirely fabricated.  Plaintiff's Amended Complaint does not allege he applied for employment with CEVA Freight.  In contrast, his Amended Complaint concedes "[a]t the time that Plaintiff applied, and even today, he did not know the technical identity of the specific CEVA entity with whom he was applying."  (Am. Compl. ¶ 21).  Moreover, the Amended

Complaint does not include a single allegation indicating that CEVA Freight caused Plaintiff's consumer report to be procured. Plaintiff's "caused to be procured" argument is nothing more than speculation, untethered from any "factual" allegations in the Amended Complaint.

Plaintiff next argues that "if more than one of the CEVA entities shared a consumer report in order to make a hiring decision, they were each a user of that consumer report." (Mem. Opp'n, at 27). Plaintiff's Amended Complaint, however, makes no reference to Defendants "sharing" consumer reports. Thus, this supposed "sharing" theory cannot serve as a basis to avoid dismissal. Moreover, even if this "sharing" theory was present in the Amended Complaint, it is utter speculation that falls well short of the showing of "plausibility" required under *Iqbal* and *Twombly*. Plaintiff's *argument* is effectively as follows: (1) "if" sharing of a consumer report occurred; (2) then each entity that may have shared in a consumer report could be a user of the consumer report; (3) if such an entity was a user of a consumer report; (4) then it might have had FCRA obligations; and (5) if an entity had FCRA obligations; (6) then it might have owed (and breached) FCRA obligations owed to Plaintiff. Plainly, Plaintiff's "sharing" argument is pure speculation that has no relation to the actual "facts" alleged in the Amended Complaint. It is not a ground for denial of Defendants' motion.[4]

Plaintiff also argues that "basic 'alter ego'" analysis necessitates denial of Defendants' motion.[5] The "facts" that Plaintiff basis this alter ego analysis on, however, are found nowhere in the Amended Complaint or Defendants' Answer. First, Plaintiff argues that Defendants have

---

[4] In support of this "sharing" theory, Plaintiff cites to the FTC's treatment of joint users from 1990. (Mem. Opp'n, at 27 n. 15). The FTC, however, has explicitly acknowledged recently that "joint user" is a phrase that appears nowhere in the FCRA. *See* 40 Years of Experience with the FCRA (July 2011), at 10, *available at:* http://www.ftc.gov/os/2011/07/110720fcrareport.pdf. The FTC has acknowledged that the "joint user" concept is "strained" and "it is not in accord with the precise analytical treatment [of the FCRA] that [FTC] staff believes is appropriate." *Id.* Plaintiff has failed to cite any authority for his premise that an entity is a joint user of a consumer report if a report is shared with that entity, but the entity takes no action with respect to the report.

[5] In connection with this argument, Plaintiff contends that the issue of whether the actions of one corporation should be imputed to another corporation is for the jury. When Plaintiff fails to plead facts sufficient to raise his claims from speculation to plausibility, such claims are ripe for dismissal as a matter of law.

admitted that "all CEVA entities are controlled entirely by a single entity – CEVA Logistics." (Mem. Opp'n, at 27).  This is untrue.  Plaintiff cannot cite to, nor have Defendants made, such an admission.  Second, Plaintiff argues that the Amended Complaint alleges that Defendants have "integrated management, finances and control."  (*Id.*).  This is also incorrect, as the Amended Complaint makes no such allegation.  Plaintiff cannot cure deficient pleadings through argument in opposition to Defendants' motion for judgment on the pleadings.  Plaintiff's Amended Complaint fails to include any facts that can support a plausible claim that Defendants are not separate corporate entities.  This is especially true in light of Defendants' undisputed statements to the contrary in their Answer.

The law Plaintiff cites in his brief in support of his alter ego analysis is of little help to him.  For example, Plaintiff principally relies on *Flexible Benefits Council v. Feltman*, 1:08cv371, 2008 U.S. Dist. LEXIS 46626 (E.D. Va. June 16, 2008) for the proposition that veil piercing allegations are sufficient (and, thus, CEVA Freight and CEVA Logistics can be sued in a lawsuit entirely unrelated to them) provided the plaintiff merely alleges that "upon information and belief" all of the defendants worked in concert with each other.  (Mem. Opp'n, at 28).  This is a gross mischaracterization of *Feltman* holding.

In *Feltman*, several individual defendants sought dismissal of trademark infringement claims on the ground that they were acting within the scope of their duties as officers of one of the defendant corporations, and not in their individual capacities.  *Feltman* did not involve the attribution of one corporation's conduct to another corporation.  Therefore, it is inapplicable to the present case.  In addition, the Court held in *Feltman* that while veil piercing was an extraordinary step, an officer of a corporation can be held personally liable if he or she actively and personally participated in trademark infringement.  Applied to the facts of that case, the

Court held that *eight paragraphs* of the complaint alleged facts specifically describing how the individual defendants at issue contributed to trademark infringement.  These specific and personal allegations were sufficient to withstand a motion to dismiss.  The Court did not, as Plaintiff argues, decline to dismiss the trademark infringement counts against the individual defendants based simply on a conclusory statement of concerted action.  *Feltman* is inapplicable to Plaintiff's unsupported allegations of joint conduct in the Amended Complaint.[6]

## 2.  Defendants Complied with the FCRA

Even if Plaintiff had plausibly alleged that each defendant *could* be held liable for the conduct he alleges, the defendants have, nonetheless, complied with the FCRA.

### A.  Section 1681b(b)(2)(*A*) and 1681b(b)(2)(*B*) are Alternative Avenues of Compliance

In Defendants' opening brief, they demonstrated that § 1681b(b)(2)(*A*) and § 1681b(b)(2)(*B*) provide alternate methods for providing a disclosure regarding the procurement of a consumer report.  In Plaintiff's response, he contends that Defendants' arguments on that score contain "no meaningful analysis" and consist of "unsupported claim[s]."  (Mem. Opp'n., at 9).  Yet, what is glaringly absent from Plaintiff's memorandum is *authority* disputing Defendants' position.  As the structure of the FCRA, history of its provisions, and secondary sources makes clear, when an entity is permitted to comply with the FCRA under § 1681b(b)(2)(*B*), it may *also do so* under the *more rigorous* requirements of § 1681b(b)(2)(*A*).

When Congress enacted § 1681b(b)(2)(*B*), § 1681b(b)(2)(*A*) already existed.  The purpose of subparagraph (B) was to "remove burdensome restrictions so that trucking companies

---

[6] Plaintiff cites a string of other cases he argues support his notion that the alleged conduct of CEVA Logistics U.S. should be imputed to the other defendants.  But these cases are also inapposite to the facts alleged in the Amended Complaint.  *See, e.g. Osgood v. Midwest Parking Solutions*, 4:07cv1365SNLJ, 2009 U.S. Dist. LEXIS 115730 (E.D. Mo. Dec. 11, 2009) (only finding that the corporate form did not insulate an individual from liability when that individual: (1) co-mingled corporate assets with his personal assets and thereby disregarded the corporate form; (2) undercapitalized the corporation; (3) had operational control of the corporation; (4) had an ownership interest in the corporation; (5) controlled all significant functions of the corporation; and (6) determined the corporation's pay and payroll practices).  Plaintiff's Amended Complaint lacks any facts on par with the facts in *Osgood*.

will be able to conduct background investigations of driver applicants in a timely and efficient manner to help ensure highway safety."   144 Cong. Rec. H 10218, 10219 (Oct. 8, 1998) (statement of Rep. Leach).   In discussing the provision that would become subparagraph (B), Representative Leach explained that subparagraph (A), enacted previously, "unintentionally hindered the ability of trucking companies to hire safe, professional truck drivers" by "*requir[ing]* trucking companies to obtain written consent from truck driver applicants before the company may obtain driving records and accidents history information required by the Federal Highway Administration."   (*Id.*) (emphasis added).   Subparagraph (A) "forced the trucking industry to add multiple, unnecessary steps to its hiring procedures, especially since these background checks are already required under federal law." (*Id.*).

Because subparagraph (A) imposed burdensome requirements on trucking companies, Congress passed subparagraph (B).   This subparagraph, in the words of Representative Leach, "would ***permit*** trucking companies to accept an applicants [sic] consent over the telephone." (*Id.*) (emphasis added).   The use of the word "*permit*" here is telling.   While Representative Leach discussed subparagraph (A) in terms of imposing *requirements* on companies prior to procurement of a background check, he discussed subparagraph (B) in *permissive* terms.   The logical import of this statement is that, while a trucking company *may comply* with the FCRA under subparagraph (B) in certain instances, subparagraph (B) does not foreclose companies from complying with the FCRA through subparagraph (A).

These sentiments were echoed by Representative LaFalce during his discussion of subparagraph (B), as he spoke to Congress in support of the legislation:

> The primary issue addressed by the bill relates to problems encountered by a limited number of firms that provide employment screening for national trucking companies. Under FCRA any report on an individual produced by a hired third party falls under the category of a "consumer report". It requires, where such

reports are prepared for employment purposes, that certain disclosures be provided in writing to the individual who is the subject of the report; that the individual provide written authorization for release of the report and that the employer provide a written copy of the report to the applicant where an adverse decision is made based on information in the report.

Since the companies providing employment screening for trucking firms seek applications in all parts of the country and communicate primarily by telephone, fax or mail, current FCRA requirements that disclosures and authorizations be made in person and in writing are inappropriate and burdensome. The legislation would add several narrowly crafted exceptions to FCRA that *would permit*-where employment applications are taken by phone, mail or electronically-greater flexibility in providing required disclosures and authorizations either by "oral, written or electronic means", and in permitting delivery of a credit report to an applicant within three days after an adverse employment decision.

(*Id.* at 10220) (emphasis added).  Like Representative Leach, Representative LaFalce indicates that subparagraph (B) was intended to *permit* an alternative form of compliance with the FCRA in order to ease the burdens created by subparagraph (A).   There is no indication that subparagraph (B) was passed to *require* a disclosure under subparagraph (B), when permitted, even if a company chose to follow the heightened disclosure requirement of subparagraph (A).

The history of the Senate proceedings on this legislation further compels this conclusion.

Senator Nickles spoke in favor of the legislation's passage.  In doing so, he stated:

This legislation will more appropriately address the manner in which the trucking industry hires safe, responsible drivers. If an individual applies for employment by mail, telephone, or electronic means, *the employer can notify* the potential employee orally, in writing, or electronically, that a consumer report may be obtained for employment purposes. The applicant must then consent to the procurement of that report.

This legislation *will also allow an employer* within the trucking industry, if the potential employee has applied for employment by mail, telephone, or electronically, to take adverse action based on the report and then notify the consumer within three business days that adverse action has been taken.

144 Cong. Rec. S 11638, 11639 (Oct. 6, 1998) (statement of Sen. Nickles) (emphasis added).

Much like Representatives Leach and LaFalce, Senator Nickles speaks of the exceptions for

certain truck driving applicants in permissive terms.   According to Senator Nickles, the "employer can notify" the potential employee of a background check through the provisions of subparagraph (B) and the FCRA "allow[s]" a potential employer to comply with the FCRA by following the adverse action exceptions created for certain truck driving applicants.   As the drafters made clear, the subparagraph (B) was never designed to foreclose on a company's ability to comply with the FCRA through the more onerous requirements of subparagraph (A).

Guidance from the Federal Trade Commission ("FTC") further supports this conclusion. In fact, the FTC has specifically stated that the provisions created for trucking companies provide "**alternative**" methods of FCRA compliance.   The FTC recently issued guidance entitled "40 Years of Experience with the Fair Credit Reporting Act," which it described as a chance to "share its extensive experience" with the FCRA "through a summary of its key interpretations and guidance."   *See* 40 Years of Experience with the FCRA (July 2011), at 51, *available at:* http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.   In this report, the FTC discussed the trucking industry exceptions to the adverse action notification requirements, which were passed at the same time as the disclosure exceptions discussed above.   According to the FTC, under the traditional adverse action provisions of the FCRA, "…employers ***must provide*** the consumer with a copy of the report and a written summary of consumer rights under the FCRA." (*Id.* at 52).   In contrast, under the trucking industry exception, "Section 604(b)(3)(B-C) provides ***alternate*** preadverse action notices for consumers who have applied for jobs in the trucking industry by mail, phone, or computer." (*Id.*) (emphasis added).

Although the FTC is discussing the pre-adverse action requirements in the passages above, the logic applies in equal force to the disclosure requirements under § 1681b(b)(2)(*A*) and § 1681b(b)(2)(*B*).   The FTC's language demonstrates the clear dichotomy between *mandatory*

provisions of the FCRA and *permissive provisions* for the trucking industry designed to ease burdens created by previous FCRA enactments.  The trucking industry exceptions to the FCRA, in the words of the FTC, were designed as "alternate" methods by which a company could comply with the FCRA in certain situations.[7]

B.   The Statutory Language does not Alter this Conclusion

The language and the structure of § 1681b(b)(2)(A) & (B) do not change this conclusion. As discussed above, Congress passed § 1681b(b)(2)(***B***) as an alternate means for an employer to comply with any disclosure obligations it may have under § 1681b(b).   According to § 1681b(b)(2)(***A***), "[e]xcept as provided[8] in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless…" a clear and conspicuous disclosure has been made and the consumer has authorized the procurement of the report.   15 U.S.C. § 1681b(b)(2)(A).   This provision establishes a background rule that a consumer report can only be procured if the steps in subparagraph (A) have been followed.  The provision provides an exception, however, which allows an entity to comply with the FCRA "as provided in subparagraph (B)."

Subparagraph (B) does not modify the background rule.   Nowhere in subparagraph (B) does it state that subparagraph (A) is of no force and effect if an applicant happens to fall within the permissive provisions of subparagraph (B).   Rather, subparagraph (B) provides that if a prospective employer chooses to comply with the FCRA through the exception created in

---

[7] Sources cited in Plaintiff's own brief also support this interpretation.  Plaintiff's brief relies on a secondary source that uses this "permissive" language.  According to Plaintiff's brief, "[t]he 1998 Amendments drew a very narrow exception drew a very narrow exception to this requirement, and now ***permit certain employers*** to provide the prior disclosure and obtain the prior authorization orally or electronically if there has been no 'in person' contact before the consumer report is procured."  (Mem. Opp'n, at 14-15) (quoting Lynne B. Barr & Barbara J. Ellis, *The New FCRA: An Assessment of the First Year*, 54 Bus. Law. 1343, 1349 (1999)) (emphasis added).  As this quote makes clear, an employer's ability to comply with the FCRA through § 1681b(b)(2)(B) is *permissive*.  Nowhere do the statute or secondary sources state that disclosures pursuant to subparagraph (B) are *required* in lieu of those provided for under subparagraph (A).

[8] Of note, the statute states "[e]xcept as *provided* in subparagraph (B)."  It does not state, "except as *required*."

16

subparagraph (A), that employer "shall provide to the consumer, by oral, written, or electronic means, notice that a consumer report may be obtained for employment purposes, and a summary of the consumer's rights under section 1681m(a)(3)."  15 U.S.C. § 1681b(b)(3)(B).  The use of "shall" in this provision does not indicate that if the status of a potential employee *allows* for an employer to comply with the FCRA's disclosure requirements through subparagraph (B), compliance through subparagraph (A) has somehow been foreclosed.

Subparagraph (C)'s use of "shall" has the same effect.   According that provision, "[s]ubparagraph (B) shall apply to a person procuring a consumer report on a consumer in connection with the consumer's application for employment only if…" certain requirements regarding the position being applied for and the interaction between the potential employer and employee are met.  15 U.S.C. § 1681b(b)(2)(C).  Subparagraph (C) merely establishes the types of situations in which a potential employer is entitled to avail itself of the exception carved out in subparagraph (B).  Subparagraph (C) does not alter the background rule created by subparagraph (A) or limit a potential employer's right to comply with the FCRA through subparagraph (A).

As the legislative history and the FTC's interpretation of 15 U.S.C. § 1681b(b)(2)(***B***) make clear, that provision provides an alternate provision through which a potential employer is entitled to comply with the FCRA.  It does not foreclose the ability to comply with the FCRA through 15 U.S.C. § 1681b(b)(2)(***A***).[9]  Because Plaintiff received a disclosure that complied with the FCRA, the Court should dismiss Count I in its entirety.

---

[9] The fact that the FCRA has a remedial purpose does not alter this analysis.  Plaintiff concedes that, in general, an employer is permitted to comply with the FCRA's background check disclosure requirements by following § 1681b(b)(2)(A).  Plaintiff also concedes that the purpose of enacting § 1681b(b)(2)(B) was to remedy disclosures that had become "inappropriate and burdensome" in certain instances.  (Mem. Opp'n, at 14) (quoting 1998 CR H10220).  The fact that an employer chooses to comply with the FCRA in a more burdensome, yet still perfectly acceptable manner, does not undermine any remedial purpose of the FCRA.

C. CEVA Logistics U.S. Provided Plaintiff with a Disclosure that Fully Complies with 15 U.S.C. § 1681b(b)(2)(A)

In Defendants' opening memorandum, it demonstrated that as a matter of statutory interpretation, CEVA Logistics U.S. was permitted to comply with any FCRA disclosure requirements by providing Plaintiff with a disclosure that complied with 15 U.S.C. § 1681b(b)(2)(*A*). It also demonstrated that the disclosure provided to Plaintiff did, in fact, comply with § 1681b(b)(2)(A). Plaintiff has failed to dispute the fact that he received a disclosure informing him that a background check would be procured on him and that this disclosure complied with § 1681b(b)(2)(*A*). Thus, Plaintiff has conceded these points.[10]

**3. A Finding of No Willfulness is Proper at the Motion for Judgment on the Pleadings Stage**

Even if the Court were to conclude that Plaintiff had alleged a technical violation of the FCRA, which Defendants dispute, a finding of no willfulness is appropriate at the pleadings stage. Defendants have shown that CEVA Logistics U.S. was permitted to comply with the FCRA through 15 U.S.C. § 1681b(b)(2)(*A*). Defendants have also shown that CEVA Logistics U.S. did, in fact comply with that provision. In Plaintiff's opposition brief, he does not dispute that, if CEVA Logistics U.S. is permitted to comply with the FCRA under § 1681b(b)(2)(*A*), the disclosure form Plaintiff received did, in fact, comply with that provision. Thus, assuming compliance with § 1681b(b)(2)(*A*) is appropriate, the Court should find that CEVA Logistics U.S. did not willfully violate that provision.[11]

This leaves the question of whether it was objectively reasonable for CEVA Logistics U.S. to comply with the FCRA through § 1681b(b)(2)(*A*). The answer is emphatically yes. As

---

[10] Plaintiff argues in his brief that Defendants have violated the pre-adverse action requirements in § 1681b(b)(*3*)(A). While Defendants believe that the evidence will show CEVA Logistics U.S. has complied with that provision as well, that provision is not the subject and has no bearing on the present motion.
[11] Plaintiff has failed to rebut the numerous arguments Defendants make in their opening brief as to why the form they provided to Plaintiff was objectively reasonable.

discussed in Defendants' opening brief, the *Safeco* Court established several measuring sticks to determine whether an interpretation of the FCRA was objectively reasonable, including whether the defendant was interpreting the statute in the absence of any contrary authority on its meaning because no court of appeals had spoken on the issue and no authoritative guidance had come from the FTC. *See Dreher v. Experian Info. Solutions, Inc.*, No. 3:11cv624, 2013 U.S. Dist. LEXIS 76166, at *12 (E.D. Va. May 30, 2013) (Gibney, J.) (citations omitted).

Here, Plaintiff has failed to cite *any authority* holding that an employer is not permitted to comply with its FCRA disclosure requirements under § 1681b(b)(2)(*A*), even if it also permitted to comply with § 1681b(b)(2)(*B*).  In addition, the legislative history and statements from the FTC strongly indicate that subparagraphs (A) and (B) are permissive alternates.  CEVA Logistics U.S.' use of a disclosure form that complied with subparagraph (A) is objectively reasonable in light of the statutory text, the lack of authority on the subject, and the legislative history and FTC statements supporting its approach.  A finding of no willfulness is appropriate as a matter of law.

And this finding is appropriate at the pleadings stage.  As Defendants' demonstrated in their opening brief, numerous courts have made such a finding on motions to dismiss and motions for judgment on the pleadings.  That is because a finding of no willfulness turns on an objective inquiry of reasonableness.  Plaintiff fails to confront these cases in his brief and, instead, simply incorporates a quote from *Singleton v. Domino's Pizza*, LLC, No. 11-1823, 2012 U.S. Dist. LEXIS 8626 (D. Md. Jan. 25, 2012).

But *Singleton* does not hold that a finding of no willfulness is never appropriate at the pleadings stage.  The court in *Singleton* simply held that a finding of no willfulness was not appropriate on the facts before it at that time.  These included: (1) the fact that discovery could reveal that the defendant not had adopted the interpretation of the statute it proposed; and (2) the

Court's belief that the defendant's interpretation did not comply with an objectively reasonable reading of the statute.

*Singleton* is inapposite from the present case for several reasons. First, as the Third Circuit noted in *Fuges* (discussed approvingly by this Court in *Dreher*), questions of willfulness turn on whether a company's reading of a statute is objectively reasonable. The question of whether the company *actually interpreted the FCRA prior to the commencement of the lawsuit* is irrelevant as long as the conduct is objectively reasonable. *See Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241 251 (3d Cir. 2012). Thus, discovery on the defendant's actual interpretation of a statute, which the court in *Singleton* considered, is not a basis for denying a motion for judgment on the pleadings. Second, Plaintiff has failed to offer any authority demonstrating that Defendants' conduct in this case was anything but objectively reasonable. For that reason, *Singleton* is distinguishable.

In fact, at least one Court in this Circuit has granted a motion to dismiss at the pleadings stage in an FCRA case, including a finding of no willfulness, since *Singleton*. *See King v. Equable Ascent Fin., LLC*, No. 1:12cv443, 2013 U.S. Dist. LEXIS 80986, at *9-10 (M.D.N.C. June 10, 2013). And in that case, the court specifically cited *Singleton* for the prospect that certain pleadings regarding willfulness are insufficient to withstand a motion for judgment on the pleadings. *Id.* As Defendants' demonstrate in their opening brief, a finding of no willfulness is appropriate at this stage in the proceedings.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant their Motion for Partial Judgment on the Pleadings.

Dated: October 4, 2013

**CEVA FREIGHT, LLC, CEVA LOGISTICS, LLC and CEVA LOGISTICS U.S. INC.**

By:     /s/ David M. Gettings
David M. Gettings (VSB No. 80394)
John C. Lynch (VSB No. 39267)
*Attorneys for CEVA Freight, LLC, CEVA LOGISTICS, LLC, and CEVA LOGISTICS U.S., INC.*
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462
Telephone No. (757) 687-7747
Facsimile No. (757) 687-1545
Email:  david.gettings@troutmansanders.com
Email: john.lynch@troutmandsanders.com

## CERTIFICATE OF SERVICE

I certify that on the 4th day of October 2013, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System which will then send a notification of such filing

(NEF) to the following:

**Counsel for Plaintiff**
Leonard Anthony Bennett
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Email: lenbennett@clalegal.com

Anthoney R. Pecora
Stumphauzer, O'Toole, McLaughlin, McGlamery & Loughman
5455 Detroit Rd
Sheffield Village, OH 44054
Email: apecora@sheffieldlaw.com

Matthew A. Dooley
Stumphauzer, O'Toole, McLaughlin, McGlamery & Loughman
5455 Detroit Rd
Sheffield Village, OH 44054
Email: mdooley@sheffieldlaw.com

Susan Mary Rotkis
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Email: srotkis@clalegal.com

/s/ David M. Gettings
David M. Gettings (VSB No. 80394)
*Attorney for CEVA Freight, LLC, CEVA*
*LOGISTICS, LLC, and CEVA LOGISTICS U.S.,*
*INC.*
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462
Telephone No. (757) 687-7747
Facsimile No. (757) 687-1545
Email:  david.gettings@troutmansanders.com

21294981