**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

**ANDRE LAMONT BOYD, on behalf of**
**Himself and all others similarly situated,**

        **Plaintiff,**

**v.**

**CEVA FREIGHT, LLC,**

**CEVA LOGISTICS, LLC,**

**CEVA LOGISTICS NORTH AMERICA,**

**CEVA LOGISTICS, U.S. INC.,**

**and**

**JOHN DOE, INC.**

        **Defendants.**

                          **Civil Action No. 3:13cv150**

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS PURSUANT TO FED R. CIV. P. 41(a)(2) OR, IN THE ALTERNATIVE, FOR SANCTIONS UNDER FED R. CIV. P. 37(c)(1)

CEVA Freight, LLC ("CEVA Freight"), CEVA Logistics, LLC ("CEVA Logistics"), and

CEVA Logistics U.S., Inc. ("CEVA Logistics U.S." and collectively "Defendants"), by counsel,

submit this Memorandum in Opposition to Plaintiff's Motion to Dismiss pursuant to Rule 41 of

the Federal Rules of Civil Procedure or, in the alternative, Motion for Sanctions.  For the reasons

below, Defendants request the Court deny Plaintiff's Motion.[1]

### INTRODUCTION

Plaintiff is not entitled to voluntary dismissal without prejudice under Rule 42(a)(1) or to

the sanctions he seeks under Rule 37(c) (1).  Plaintiff's motion is a last ditch attempt, after the

close of discovery, to make up for his own discovery inactivity in this matter by blaming

---

[1] Per the Court's instruction, Plaintiff re-filed the Rule 37 component of his motion for voluntary dismissal (ECFs 47 and 48) as a standalone motion (ECF 53).  Plaintiff did not file a new memorandum in support.  As such, this memorandum is intended as a response to the two motions Plaintiff has pending.  (*See* ECFs 47 and 53).

Defendants.  At its core, Plaintiff's motion seeks to preclude Defendants from using witnesses or documents that allegedly were not disclosed timely in their Rule 26(a)(l) initial disclosures or Rule 26(e) supplemental disclosures.  Contrary to Plaintiff's contention, Defendants did indeed serve appropriate initial disclosures, which were supplemented before Defendants' discovery responses were due and over one month prior to the close of discovery.

With respect to initial disclosures, Defendants served timely initial disclosures on Plaintiff in August of 2013 and then supplemented those initial disclosures in December, prior to the due date for any of Plaintiff's written discovery and over one month before the close of Phase I discovery.  With respect to written discovery, Defendants served Plaintiff with responses to interrogatories and documents responsive to his requests for production within four days of the deadline under the Federal Rules of Civil Procedure and within the extension period Plaintiff offered to Defendants.  Plaintiff argues that it is unfair to him to have received documents toward the end of Phase I discovery.  This, however, is completely attributable to Plaintiff's failure to diligently prosecute his own class action lawsuit and his late requests for documents in an alternate format to which he was not entitled.  He should not be permitted to shift the blame.

With respect to witnesses, Defendants named the two witnesses with specific knowledge of Plaintiff who they believed may be used to support their defenses in August of 2013.  Plaintiff waited nearly four months to attempt to take their depositions – serving deposition notices one week before the close of Phase I discovery and unilaterally setting those depositions for nearly three weeks later.  Defendants continued their investigation of the case and supplemented these disclosures with four potential additional witnesses on December 13, 2013, once Defendants determined that these individuals may be used to support their defenses.  Once again, Plaintiff waited nearly a month to attempt to take their depositions, noticing the depositions one week

before the close of Phase I, to take place two weeks after the close.  Defendants have not attempted to use any witnesses that were not disclosed on December 13, 2013 or earlier.

While Plaintiff's argument is crafted in generalities, it is short on actual prejudice. Plaintiff has failed to specifically point to how any alleged failure of Defendants in discovery, as opposed to his lack of diligence, has prejudiced his ability to move for class certification. Moreover, with respect to summary judgment, the majority of the exhibits Defendants referenced in their summary judgment brief were disclosed to Plaintiff in August.  Defendants have not used a single document on summary judgment from their small supplemental production on January 17, 2014.   In addition, Defendants' summary judgment memorandum is supported by declarations from three declarants.  Defendants disclosed two of these declarants to Plaintiff in August 2013 and one on December 13, 2013 – over one month before the close of discovery and weeks before any discovery responses were actually due.

In light of this background, Plaintiff's request for voluntary dismissal and for the drastic remedy of preclusion sanctions must be denied.  As discussed below, Defendants acted promptly and in good faith throughout the discovery process – often going above and beyond what is required by the Federal Rules of Civil Procedure in order to meet Plaintiff's demands.  Plaintiff waited to seek discovery under the apparent theory that the Court would extend the deadline for Phase I discovery.  Because it did not, Plaintiff attempts to shift the blame to Defendants.

### FACTS

1.	On July 30, 2013, the Court entered its Initial Scheduling Order, laying the foundation for discovery in this case, setting a deadline for initial disclosures pursuant to Rule 26(a), and provided that those disclosures could be updated during discovery.  (ECF 24).

**I.**     **Defendants' timely initial disclosures and Motion for Judgment on the Pleadings**

2.     On August 16, 2013, Defendants served Plaintiff with timely initial disclosures under Rule 26(a)(1).  (*See* **Exhibit A**).

3.     In these disclosures, Defendants identified the two individuals from CEVA Logistics U.S., Joan Burgos and Michelle Stempkowski, whom had specific knowledge of the facts regarding Plaintiff alleged in the Amended Complaint.  At the time of these disclosures, these were the only individuals whom Defendants had concluded may be used to support their defenses.

4.     Through these disclosures, Defendants also produced the documents of which they were aware and that they had reviewed that they believed may be used to support their defenses.  These produced documents comprise the majority of exhibits in Defendants' currently pending Motion for Summary Judgment.  (*See* Ex. A).

5.     On August 19, 2013, Plaintiff served his initial disclosures pursuant to Rule 26(a)(1).  In these disclosures, Plaintiff recognized the right to supplement disclosures, stating that he "[r]eserves the right to supplement these initial disclosures (either through express supplements to these disclosures or through response to formal discovery) when additional information becomes available."  (*See* **Exhibit B**, at 1).

6.     On August 26, 2013, Defendants filed a Motion for Partial Judgment on the Pleadings.  (ECF 26).

**II.**     **Plaintiff failed to conduct any discovery during the first three months of discovery**

7.     On August 27, 2013, the Court entered the Parties' Agreed Scheduling Order, opening discovery in this case.  (ECF 30).  In this Order the Court divided discovery into two

phases, with Phase I set to close on January 17, 2014 and with summary judgment and class certification briefing based on Phase I discovery due on February 6, 2014.  (*Id.*).

8.      On September 9, 2013, Plaintiff requested an extension of time in which to respond to the Motion for Partial Judgment on the Pleadings.  (ECF 32).  Defendants did not object.  Plaintiff has provided Defendants similar extensions when requested.

9.      On September 16, 2013, Plaintiff requested another extension of time to respond to the Motion for Partial Judgment on the Pleadings.  (ECF 34).  Defendants did not object.

10.     Plaintiff did not serve any discovery requests in the month of September

11.     Plaintiff also did not serve any discovery requests in the month of October.

12.     Plaintiff also did not serve any discovery requests in nearly all of November.

13.     Throughout this time, despite no pending discovery requests, Defendants were analyzing the case, identifying individuals who could potentially have documents responsive to the discovery requests that Plaintiff might serve, and gathering and reviewing those documents.

**III.   Defendants have been responsive to Plaintiff's discovery requests, have repeatedly cooperated with Plaintiff during the discovery process, and have gone above and beyond what the Federal Rules require in responding to issues Plaintiff raised**

14.     On November 27, 2013, the Court denied Defendants' Motion for Partial Judgment on the Pleadings.  (ECF 40).

15.     On that same day, after the Court's ruling, Plaintiff served his first set of interrogatories and requests for production of documents on Defendants.

**A. Defendants served timely discovery objections, clearly informing Plaintiff how they would  produce documents**

16.     On December 12, 2013, Defendants served timely objections to Plaintiff's discovery requests.  In these objections, Defendants informed Plaintiff precisely how they were going to produce documents.  Specifically, Defendants stated, in part:

…Defendants will produce electronically stored information ("ESI") in a reasonably usable format. Specifically, ESI will be produced in single-page black and white Group IV, 300 dpi or greater TIFF format image files. For ESI without standard pagination (e.g. spreadsheets (*.xls, *.xlsx), database files (*.mdb), various multi-media files (audio and video), and other non-standard files, Defendants will produce the documents in native format, unless such documents have been redacted. In addition to the native file produced for such documents, Defendants will produce a single page TIFF placeholder indicating the beginning production number of the native file, the confidentiality designation, and will state "Produced in Native Format…."   (*See* **Exhibit C**, at pp 15-17) (interrogatory objections omitted).

17.     The production format Defendants described is a widely-accepted production format.  *See Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.,* 718 F.3d 249, 253 n.5 (4th Cir. 2013) (quoting Sedona Glossary 50) (noting that "[t]he .tif extension connotes a TIFF file, '[a] widely used and supported graphic file format[ ] for storing . . . images.'").

18.     At no point prior to Defendants' production of documents did Plaintiff object to the production format Defendants described to him.

**B.  Defendants properly supplemented their initial disclosures prior to the due date of any discovery requests and over one month before Phase I discovery closed**

19.     On December 13, 2013 – prior to the due date of any discovery responses and over one month before the close of discovery – Defendants supplemented their initial disclosures.  (*See* **Exhibit D**).  In this supplement, Defendants disclosed individuals whom they had determined during their investigation of the facts may be used to support their defenses.

20.     Defendants have not used declarations in support of summary judgment from any individuals not disclosed on December 13, 2013 or earlier.

21.     This supplement also provided a description of documents, by category and location, that Defendants had determined they may use to support their defenses.  (Ex. D, at ¶ B). These documents described, along with the documents produced in August, comprise the documents Defendants have used in support of summary judgment.

**C.  Defendants were responsive to Plaintiff's requests to meet and confer**

22.     On December 16, 2013, Plaintiff requested a "meet and confer" regarding Defendants' objections to his interrogatories.  The next day, Defendants' counsel offered to "meet and confer" on December 19, 2013.  (*See* **Exhibit E**).

23.     The Parties ultimately had a meeting on December 23, 2013, during which Defendants believed the Parties had resolved the discovery objections they each raised.

24.     Defendants' responses to Plaintiff's discovery were not due until December 30, 2013 under the Federal Rules of Civil Procedure.  During the "meet and confer," Defendants informed Plaintiff that they expected to produce their responses on December 27, 2013.  In response, Plaintiff's counsel offered to provide an extension until after the holiday season.

25.     During this meeting, the Parties did not discuss or agree on the taking of any depositions of Defendants or discuss extending the deadline for the close of Phase I discovery.

**D.  Defendants agreed to Plaintiff's request to seek an extension of Phase I discovery and, in fact, offered to draft the brief regarding Plaintiff's request**

26.     On December 27, 2013 Plaintiff requested an extension of time to respond to Defendants' discovery.  Defendants promptly agreed.  (*See* **Exhibit F**).

27.     On or about December 31, 2013, Plaintiff's counsel requested, for the first time, that Defendants agree to an extension of the deadline for the close of Phase I discovery.  Defendants' counsel indicated that he would have to discuss the request with his clients, but that Defendants would likely be hesitant to extend discovery.

28.     On January 1, 2014, Plaintiff's counsel acknowledged this conversation, stating:

I understand that Mr. Gettings responded to Matt Dooley's inquiry that CEVA would likely oppose moving the discovery cutoff.  Given that position, we are fine and will rely on the present date.  (*See* **Exhibit G**).

29.     Plaintiff's January 1, 2014 email included Plaintiff's first mention of taking depositions of Defendants' employees.  (*See* Ex. G).

30.     On January 2, 2014, Defendants agreed to Plaintiff's request to seek an extension of Phase I discovery from the Court to February 28, 2014.  In fact, despite Plaintiff requesting the extension, Defendants offered to draft Plaintiff's requested motion.  In this exchange, Defendants also stated that they would provide their discovery responses to Plaintiff by January 3, 2014 – only four days after the due date under the Federal Rules – and within the brief extension offered by Plaintiff during the Parties' meeting.

**E.  Defendants provided discovery responses to Plaintiff only four days after they were due under the Federal Rules, but within Plaintiff's proposed extension, and in the precise format to which Defendants had committed**

31.     On January 3, 2014, Defendants responded to Plaintiff's interrogatories and produced documents to Plaintiff.  Defendants produced these documents in the precise format they described to Plaintiff in their discovery objections.

32.     These documents were produced only four days after they were due under the Federal Rules of Civil Procedure, but within Plaintiff's proposed extension.

33.     This production consisted of 1,352 documents (4,444 pages) produced on behalf of CEVA Logistics U.S. and 300 documents (1,331 pages) produced on behalf of CEVA Freight. These documents were organized in the order in which they were collected from the relevant document custodians and, where emails were involved, were produced by "families" (i.e. emails grouped with their respective, responsive, attachments).[2]

---

[2] Plaintiff claims these documents were "apparently randomly shuffled."  (Mem. Supp., at 7).  This is a baseless allegation.  As discussed above, the documents were properly produced in the order they were collected.  Plaintiff received all of the "metadata" on these documents, from which he could glean the precise source of the documents.

**F.  Defendants have worked in good faith and made efforts beyond what is required by the Federal Rules to resolve Plaintiff's unwarranted discovery concerns**

34.     On January 7, 2014, Plaintiff's counsel informed Defendants, for the first time, that he would not accept Defendants' production format, despite Defendants having informed him precisely how they would produce documents almost one month earlier.  (*See* **Exhibit H**).

35.     Defendants had no obligation to re-produce documents to Plaintiff in a form other than the form to which they had committed.   Nonetheless, on January 8, 2014, Defendants agreed to reproduce documents in an alternative format.  Specifically, Defendants stated:

> We can produce in non-searchable pdf by tomorrow or searchable pdf by Friday.  Just let us know which one you prefer.  As in the initial production, non-redacted excel files will be produced in native.  In addition, we will still be providing you the metadata pertaining to the files, as we did with our initial production.  If there are select files that you find you really need in native during your review, let us know and I can see what the process is for obtaining individual native files.  (*See* **Exhibit I**).

36.     On January 10, 2014, Defendants re-produced their documents to Plaintiff. Defendants produced these documents by uploading them to an "FTP site," to which Plaintiff was given access, so that Plaintiff could view the documents immediately.  (*See* **Exhibit J**).

37.     Six days later, Plaintiff's counsel contacted Defendants' counsel and wrongly claimed: "I still did not receive the corrected pdf files you referenced and promised below."  (*See* **Exhibit K**).  He was mistaken and apologized.  Defendants had re-produced those documents six days earlier.  (*See* **Exhibit L**) ("Yep.  And there it was.  Thanks, and sorry.").

38.     On January 17, 2014, Defendants supplemented their previous production of 1,652 documents with 86 additional documents.   These documents were sent to Plaintiff's counsel, Mr. Bennett, via United States Mail.  (*See* **Exhibit M**).  Defendants did not use any of these 86 supplemented documents in their currently pending Motion for Summary Judgment.[3]

---

[3] To resolve Plaintiff's motion, Defendants are willing to agree to not use any of these 86 documents in support of their motion for summary judgment or in opposition to class certification.

39.     That same day, Defendants provided Plaintiff with a second supplemental initial disclosure.  This second supplement did not contain any new information.  Rather, it simply listed the "bates numbers" corresponding to the documents previously produced.  (*See* Ex. M).

40.     On January 20, 2014, Plaintiff's counsel emailed Defendants and asked:

> IS THERE A NON-BELLIGERENT REASON YOU DO NOT PRODUCE DOCUMENTS TO BOTH OUR FIRM AND OUR CO-COUNSEL?  (*See* **Exhibit N**) (emphasis in original).

This was the first time Defendants were informed that Plaintiff's counsel believed sending documents to Mr. Bennett alone was inappropriate.

41.     The next day, Defendants immediately sent a copy of the documents previously produced to Plaintiff's co-counsel.  (*See* **Exhibit O**).

### G. Plaintiff did not serve deposition notices or provide comments on his requested motion for an extension of Phase I discovery until the last week of Phase I

42.     On January 8, 2014, in response to *Plaintiff's request* to extend Phase I, *Defendants circulated* a draft joint motion regarding the same.  Plaintiff did not respond with input until eight days later – one day prior to the close of discovery.  (*See* **Exhibit P**).[4]

43.     On January 10, 2014, seven days before the close of Phase I, Plaintiff served eleven deposition notices.  These notices scheduled depositions for January 29th through the 31st, twelve to fourteen days after Phase I was to close.  (*See* transmittal email as **Exhibit Q**).

44.     Defendants, on the other hand, requested available dates for Plaintiff's deposition in November 2013 and took his deposition on January 10, 2014 – within Phase I discovery.

45.     The Parties never struck an agreement under which Defendants agreed to submit to depositions after the close of Phase I discovery or had any conversations regarding the same.

---

[4] In light of Plaintiff's counsel requesting the extension of Phase I, it is unclear how Plaintiff could represent that "[t]o accommodate Defendants' late production and tightened schedule for depositions of these newly disclosed witnesses, Plaintiff consented to Defendants' filing of a Motion to Enlarge pre-trial deadlines.  (Mem. Supp., at 7).

46.     On January 17, 2014, Defendants filed the Parties' Joint Motion for Extension of Discovery Deadlines, which the Court denied the same day.  (ECFs 44 & 46).

47.     On January 24, 2013, Defendants served Plaintiff with timely objections to his proposed deposition topics.  These objections occurred after the close of Phase I due to the timing of Plaintiff's deposition notices – from which the objection deadline is calculated.

48.     Defendants informed Plaintiff that these depositions, which he unilaterally scheduled, could not occur because the depositions would violate the two Court Orders governing the deadline for Phase I of discovery.  (*See* **Exhibit R**).

### H. Defendants have filed a pending summary judgment motion and spent substantial time and effort in the defense of this lawsuit

49.     On February 4, 2014, Plaintiff filed the present Motion for Voluntary Dismissal. On the same day, thirty-four minutes later, Defendants filed their currently pending Motion for Summary Judgment. (ECF 51).  Defendants had been drafting that motion for several weeks.

50.     To date, Defendants and their counsel have spent substantial time and effort in the defense of this lawsuit.  (Lynch Decl. ¶ 4, attached as **Exhibit S**).  With respect to counsel's effort alone, they have dedicated approximately 1,440 hours to this matter.  (Lynch Decl. ¶ 4).

<u>ARGUMENT</u>

I.     <u>Plaintiff's Motion for Voluntary Dismissal Should be Denied</u>

Under Rule 41(a)(2) of the Federal Rules of Civil Procedure, a plaintiff may only obtain voluntary dismissal at the plaintiff's request "by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  When considering a plaintiff's motion for voluntary dismissal, "the primary focus of the court should be the interests of the defendant."  *Dean v. WLR Foods, Inc.*, 204 F.R.D. 75, 77 (W.D. Va. 2001).  In evaluating these interests, the Fourth Circuit has established a four part test.  The Court must consider:

1) The opposing party's effort and expense in preparing for trial;
2) Excessive delay or lack of diligence on the part of the movant;
3) Insufficient explanation of the need for a dismissal; and
4) The present stage of the litigation, i.e., whether a motion for summary judgment is pending.

*Gross v. Spies*, 133 F.3d 914, at *16 (4th Cir. 1998) (unpublished table decision). *See also* 9 Wright and Miller, Federal Practice and Procedure, § 2364 (3d ed. 2004) (citing *Gross v. Spies*). In the present case, each of these factors points in favor of denying Plaintiff's motion.

**A. Defendants have put forth substantial effort and expense in the litigation**

Plaintiff's memorandum in support of his motion argues that Defendants have contributed little time and effort toward this litigation thus far. (Mem. Supp., at 12). Therefore, he argues, dismissal will not prejudice Defendants. Plaintiff's attempts to minimize Defendants' efforts are misguided.

First, Defendants have engaged in significant motions and pleadings practice since the lawsuit's inception. Initially, CEVA Logistics U.S. drafted and filed a Motion to Dismiss Plaintiff's complaint and a memorandum in support. (*See* ECFs 11 and 12). Defendants also drafted an Answer to that complaint. (ECF 13). Plaintiff did not respond, but, instead, filed an Amended Complaint. In turn, Defendants drafted and filed an Answer, and another motion, memorandum, and reply memorandum seeking dismissal based on the pleadings. (ECFs 21, 27, 39). Recently, Defendants filed a Motion for Summary Judgment and supporting memorandum. Each motion and pleading required significant time and expense on Defendants' part.

Second, Defendants have invested substantial time and effort in responding to Plaintiff's interrogatories. As Plaintiff is well aware, he served interrogatories on CEVA Logistics U.S., CEVA Freight and CEVA Logistics. These are three separate entities. As such, Defendants had to prepare three separate responses to these interrogatories – one on behalf of each relevant

entity.  Moreover, because the background check processes at issue in this litigation for CEVA

Logistics U.S. and CEVA Freight differ so dramatically, each set of responses, with respect to

most of the interrogatories, was an entirely unique and lengthy document.

Third, Defendants have invested substantial time and effort in responding to Plaintiff's

requests for production of documents.  Plaintiff served thirty-two requests for production of

documents on each individual defendant.  In gathering and analyzing potentially responsive

documents, Defendants underwent the following process:

- Numerous telephone calls with potential document custodians employed by Defendants to determine the extent of potentially responsive documents.  In addition to the time incurred by Defendants' employees, this step involved the use of two dedicated  attorneys specializing in electronic document collection and four dedicated "litigation technology" directors and/or analysts;

- Defendants filtered and processed the information collected from the relevant document custodians and created a database for those documents.  This step involved the use of one dedicated  attorney specializing in electronic document collection and three dedicated "litigation technology" analysts;

- Defendants prepared documents for review by training attorneys to perform the review, whom in turn, performed the review of thousands of documents for responsiveness, privilege, and privacy.  This step involved the use of four dedicated attorneys specializing in electronic document collection and seven dedicated attorneys to conduct the review of documents; and

- Defendants produced the responsive documents to Plaintiff.  This required the processing and production of over 6,000 pages of documents, as well as the documents' associated "metadata."  Moreover, due to Plaintiff's failure to object to the format of the production to which Defendants initially committed, Defendants went through the production process, with respect to their first production, twice.  These steps involved the use of three attorneys specializing in electronic document collection and three "litigation technology" analysts;

The process described above was costly and time-consuming.  In total, the electronic discovery

component of Defendants' document review, production and management has consumed over

seven hundred and fifty hours of work and cost thousands of dollars.

Fourth, as Plaintiff acknowledges, Defendants have taken Plaintiff's deposition – prior to the close of discovery.  Preparation for this deposition required hours of time spent analyzing documents relevant to Plaintiff, hours of time reviewing Plaintiff's discovery responses, and hours of time preparing to take the actual deposition.  It is misguided to argue that taking the named plaintiff's deposition in a purported class action lawsuit requires little effort and expense.

To date, Defendants' counsel alone has spent approximately **1,440 hours** in the defense of this litigation (including the document production figures above).  These hours, however, do not account for the additional time and expense that Defendants' employees have also spent evaluating the facts of Plaintiff's claims and the issues related to the defense of this litigation.  While Plaintiff may contend that his effort with respect to this lawsuit has been minimal, the same is not true for Defendants.  Dismissal would prejudice Defendants.  *See, e.g. Teck Gen. Pshp. v. Crown Cent. Petroleum Corp.,* 28 F. Supp. 2d 989, 991-92 (E.D. Va. 1998) (denying a motion for voluntary dismissal and finding defendant dedicated substantial time and effort to litigation when it (i) removed the action; (ii) answered the complaint; (iii) answered discovery; (iv) served its own discovery; and (v) filed pretrial motions).

**B.  The root of Plaintiff's request for dismissal is his delay and lack of diligence**

Although Plaintiff attempts to place blame on Defendants in arguing for dismissal, Plaintiff's motion was clearly necessitated by his own delay in conducting discovery.

*1.  Plaintiff is responsible for any alleged delay in written discovery*

Discovery in this case opened in August.  Plaintiff did not serve any discovery in September.  Plaintiff did not serve any discovery in October.  Plaintiff also did not serve any discovery during the first twenty-seven days of November.  Thus, Plaintiff waited 91 days, out of a total of 142 days in Phase I, to serve discovery.

Plaintiff's motion is not warranted based on any alleged delay in discovery on Defendants' part.   Because Plaintiff did not serve discovery until November 27, 2013, Defendants discovery responses were not due until December 30, 2013, with the mailing days provided for in Federal Rule of Civil Procedure 6(d).   Defendants served their discovery responses on January 3, 2014.   These responses were served only four days after the deadline provided for under the Federal Rules, but within the extension Plaintiff offered during the Parties' December 23rd meet-and-confer.   To the extent Plaintiff argues that he did not have sufficient time to digest Defendants' document production, that is solely attributed to his delay in serving discovery.

Because Plaintiff's argument regarding Defendants' discovery responses holds no water, he takes a different tack.   Plaintiff claims that Defendants delayed serving their initial disclosures under Rule 26(a).   This is far from the truth.   Defendants *timely* served their initial disclosures on August 16, 2013.   In these disclosures, Defendants provided Plaintiff with: (1) the individuals whom they had determined where knowledgeable about Plaintiff's claims and whom may be used to support their defenses:   and (2) the documents pertaining to Plaintiff that they had reviewed and determined may be used to support their defenses.

Thereafter, Defendants continued investigating Plaintiff's claims and gathering and reviewing thousands of potentially responsive documents.   By December 13, 2013, Defendants had concluded that there were additional individuals who they might use to support their defenses.   These individuals were not involved in Plaintiff's job application, but had been determined to have general knowledge of CEVA Freight's background check processes. Defendants disclosed these individuals to Plaintiff on December 13, 2013 – *well before Defendants' discovery responses were due*.   Defendants have never sought to add additional

individuals to their disclosures, nor did anyone not named in these or earlier disclosures submit a declaration in support of Defendants' Motion for Summary Judgment.

In these disclosures, Defendants also identified documents, providing a description by category and location, that Defendants may use to support their defenses.  Such an identification is specifically permitted under Rule 26(a)(1)(ii).  *See DE Techs., Inc. v. Dell, Inc.*, No. 7:04cv628, 2007 U.S. Dist. LEXIS 2769, at *6 (W.D.Va. Jan. 12, 2007) (finding it appropriate to identify documents by category and location).  Defendants have not relied on any documents that were not described in these disclosures, or produced earlier, in connection with their pending Motion for Summary Judgment.[5]  To the extent Plaintiff is referring to these document disclosures when he states in his memorandum that Defendants "disclosed and produced" documents at the "eleventh hour," (Mem. Supp., at 12), his memorandum should more appropriately be written to acknowledge that the "eleventh hour" is intended to mean "*34 days before the close of discovery.*"

### 2.  *Plaintiff is also responsible for any delay in the taking of depositions*

Any alleged failure on Plaintiff's part to take depositions in this case was also solely attributable to him.  Plaintiff did not serve a single deposition notice in this case until January 10, 2014.  Thus, Plaintiff waited 136 days out of the 142 days in Phase I discovery to serve a deposition notice.  In fact, the first time Plaintiff ever raised the prospect of taking a deposition of any of Defendants' employees was January 1, 2014.  This stands in stark contrast to Defendants, who requested available dates for Plaintiff's deposition on November 29, 2013 and

---

[5] Defendants supplemented their initial disclosures, once again, on January 17, 2014.  These disclosures, however, did not spring any new documents on Plaintiff.  They simply informed Plaintiff that Defendants may use the documents previously produced to Plaintiff (including the 86 documents produced that day) in support of their defenses and identified those documents by bates number.  It is worth noting that Defendants have not used any of the documents they produced on the last day of discovery in their Motion for Summary Judgment.

took Plaintiff's deposition on January 10, 2014, within Phase I discovery.  Plaintiff was not diligent in attempting to procure deposition testimony.

In addition, the depositions that Plaintiff noticed on January 10, 2014 were noticed to take place between January 29th and 31st – two weeks after the close of Phase I.  Not only would producing a witness on those days have violated the Court's Agreed Scheduling Order, which ordered Phase I to close on January 17, 2014, (ECF 30), it would have violated the Court's January 17, 2014 Order declining to extend Phase I discovery.  (ECF 46).

Plaintiff attempts to avoid blame on this point by arguing that "Defendant would not make its newly disclosed witnesses – or any witnesses – available for depositions until after the discovery cutoff." (Mem. Opp'n, at 5).  For several reasons, this statement is fanciful – at best.

i. First, Defendants made no commitments whatsoever to Plaintiff regarding when they would produce witnesses to him;

ii. Second, objectively, it would make no sense for Defendants to tell Plaintiff they would not make any witnesses available until after the discovery cutoff and, yet, on January 1, 2014 convey to Plaintiff's counsel that their client would likely be hesitant to extend discovery.  (*See* Ex. G).  The parties never reached an agreement to take depositions after Phase I closed;

iii. Third, there *were no "newly disclosed witnesses"* or *"late-disclosed witnesses" in January*.  (Mem. Supp., at 5-6).  Defendants made their first disclosure of witnesses in August and second disclosure on December 13, 2013.  Plaintiff had over four months to depose some of Defendants witnesses and over one month to depose the others.

In addition, Plaintiff also argues that somehow Defendants acted improperly when they objected to his notice of Rule 30(b)(6) depositions "for the first time," after the Court entered its Order denying Plaintiff's requested discovery extension.  (Mem. Supp., at 6).  What Plaintiff fails to mention, however, is that these objections were timely under the Federal Rules of Civil Procedure and the local rules of the Court.  Although these objections occurred after the close of Phase I discovery, that timing was entirely attributable to the fact that Plaintiff did not serve his

deposition notices until the last week of discovery.  The reality is that any delay in discovery in this case is attributable to Plaintiff's lack of diligence in prosecuting his own lawsuit.

### C.  Plaintiff offers no sufficient explanation for his requested voluntary dismissal

Plaintiff's entire argument for voluntary dismissal is built on the meritless contentions, as discussed above, that Defendants delayed in discovery and have not invested significant time in this lawsuit.  Objectively, it appears to Defendants that an implicit basis for the request for voluntary dismissal may be the Court's denial of the Parties' joint motion for an extension, (ECF 44), and Plaintiff's failure to conduct discovery during the allotted time period in Phase I.  To the extent Plaintiff requests dismissal because he has not conducted sufficient discovery to move for class certification or oppose summary judgment and, thus, seeks to avoid an adverse ruling, this argument has been rejected by numerous courts in this circuit.

"The Fourth Circuit has specifically held that a motion to voluntarily dismiss under Rule 41(a)(2) should be denied when a plaintiff seeks to circumvent an expected adverse result…." *Nesari v. Taylor*, 806 F. Supp. 2d 848, 861 (E.D. Va. 2011) (citing *Skinner v. First Am. Bank of Va.*, No. 93-2493, 1995 U.S. App. LEXIS 24237, at *2 (4th Cir. Aug. 28, 1995)).  *See also Walker v. Queens Gap Mt., LLC*, No. 1:10-cv-290, 2013 U.S. Dist. LEXIS 141696, at *16 (W.D.N.C. Oct. 1, 2013) (holding that the fact that the plaintiffs "may be seeking a dismissal to circumvent an expected adverse result from an arbitrator" weighs heavily against dismissal).  To the extent Plaintiff seeks to avoid an adverse decision on class certification and/or summary judgment, this weighs heavily against dismissal.

Moreover, to the extent Plaintiff seeks dismissal because of some alleged non-cooperation from Defendants in discovery, this is also factually incorrect and insufficient. Defendants described to Plaintiff the precise format in which it would produce documents and

then produced in that precise format.   When Plaintiff objected – after the production –
Defendants promptly reproduced the documents in a different form, although they were not
required to do so.[6]   In addition, Defendants agreed to Plaintiff's request to extend the deadline
for Phase I discovery.   In fact, Defendants drafted for Plaintiff the motion Plaintiff was
requesting.   Plainly, Plaintiff has not demonstrated a sufficient explanation for his request for
voluntary dismissal.

### D.  The pending summary judgment motion weighs heavily against dismissal

On the same day Plaintiff filed his Motion for Voluntary Dismissal, Defendants filed a
Motion for Summary judgment.   These motions were filed thirty-four minutes apart.   In the
Fourth Circuit, a pending summary judgment motion weighs heavily against voluntary dismissal.
According to the Fourth Circuit, it has "found on multiple occasions that a district court does not
abuse its discretion in denying a motion for voluntary dismissal if the case has advanced to the
summary judgment stage and the parties have incurred substantial costs in discovery."[7]   *Howard
v. Inova Health Care Servs.*, 302 F. App'x 166, 179 (4th Cir. 2008) (citations omitted).

For example, in *Williams v. Brumbaugh*, No. 3:10cv700, 2011 U.S. Dist. LEXIS 55627,
at *7 (E.D. Va. May 24, 2011), the Court denied Plaintiff's request for voluntary dismissal.   In
its ruling, it held that "[d]ismissing the case without prejudice while a summary judgment motion
is pending would prejudice the Defendant, who has expended considerable effort to respond to
the deficiencies in the Plaintiff's pleadings and to prepare his case for summary judgment and
trial."   *See also* 9 Wright and Miller, Federal Practice and Procedure, § 2364 (3d ed. 2004) ("The

---

[6] *See* Fed. R. Civ. P. 34(b)(3)(D) ("*Responding to a Request for Production of Electronically Stored Information.*
The response may state an objection to a requested form for producing electronically stored information. If the
responding party objects to a requested form—or if no form was specified in the request—the party must state the
form or forms it intends to use.").

[7] The pendency of a summary judgment motion alone is generally insufficient to warrant a denial of a dismissal
request.  *See Howard v. Inova Health Care Servs.,* 302 F. App'x 166, 179 (4th Cir. 2008) (citations omitted).  In this
case, the other three factors also point in favor of denying Plaintiff's motion.

fact that the defendant has filed a motion for summary judgment also may incline the district court to deny the voluntary dismissal motion.").

Like in *Williams*, the pending Motion for Summary Judgment here weighs against voluntary dismissal. Defendants' summary judgment motion should be granted and the case should be dismissed with prejudice. The motion is premised on the straightforward application of undisputed facts, many of which Plaintiff concedes. For example, Plaintiff admits through his deposition and the documents he signed during his job application process that he met with a representative of CEVA Logistics U.S., in person, prior to the time any background check was procured on him. These facts foreclose Plaintiff's claims and warrant dismissal of the lawsuit. Plaintiff seeks to avoid this outcome and effectuate a "do over" of the case by requesting voluntary dismissal. Moreover, a majority of the documents used as exhibits in Defendants' summary judgment motion, which alone provide an adequate basis for the Court to grant summary judgment, were produced with Defendants' first initial disclosures in August. This further minimizes Plaintiff's argument that any alleged discovery delay warrants voluntary dismissal.

Because the four factors above favor Defendants, the Court should deny Plaintiff's motion.

## II.   Plaintiff is not entitled to any discovery sanctions under Rule 37(c)(1)

Plaintiff's motion for sanctions pursuant to Rule 37(c)(1) also should be denied because, as set forth above, Defendants were responsive to Plaintiff's discovery requests, including requests for action by Defendants to which Plaintiff was not entitled (such as reproduction in an alternate form), and Defendants timely supplemented their Rule 26(a)(1) disclosures and discovery responses. Any delay Plaintiff alleges was substantially justified and/or harmless.

### A. Timely supplemented

All of the persons and evidence Plaintiff seeks to exclude were disclosed timely in accordance with Rules 26(a)(1) and 26(e). Rule 26(e) permits supplementation of the initial disclosure, stating "[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response…in a timely manner." The 2007 Advisory Committee Notes on the 2007 amendments to Rule 26(e) make clear that a party may supplement its disclosures and discovery responses, even if the information was available at the time of the initial disclosure or response:

> Rule 26(e) stated the duty to supplement or correct a disclosure or discovery response 'to include information thereafter acquired.' This apparent limit is not reflected in practice; parties recognize the duty to supplement or correct by providing information that was not originally provided although it was available at the time of the initial disclosure or response. **These words are deleted to reflect the actual meaning of the present rule.**

Fed. R. Civ. P. 26(e) (2007 Advisory Committee Notes) (emphasis added).

As discussed extensively above, there is no evidence that Defendants were trying to conceal any witnesses or documents – as Defendants' investigation of the case continued, they promptly supplemented their initial disclosures and discovery responses by highlighting additional individuals and describing (and ultimately producing) additional documents they may use to support their defenses.

With respect to the individuals Defendants added to their initial disclosures – Doreen Berryhill, Megan Kieschnick, Rhonda Bateman, and Shawn Helm – Defendants informed Plaintiff of these people once they determined that they may use them to support their defenses. These individuals were included in Defendants' December 13, 2013 initial disclosure supplement, which Defendants provided to Plaintiff more than one month before the period for

Phase I discovery ended, in time for Plaintiff to depose them and obtain the substance of their knowledge. It matters not that these individuals worked for one of the defendants at the time of Defendants' first initial disclosures. At that time, Defendants had not concluded that they may use them in support of their defenses. Moreover, Rule 26(e) explicitly provides for supplementation with "information that was not originally provided although it was available at the time of the initial disclosure or response."

With respect to the documents Defendants have produced, Defendants appropriately supplemented their initial disclosures on December 13, 2013 to provide a description of documents, by category and location, that they may use to support their defenses. Once again, this was more than one month before the close of discovery and prior to the time any discovery responses were due. Defendants had no obligation to produce any documents with their initial disclosures under the Federal Rules. Plaintiff cannot seek to defray the impact of his late discovery requests in this case by heaping unwarranted blame on Defendants.

**B. Plaintiff's Rule 37 Motion also should be denied because any delay was substantially justified and/or harmless.**

Defendants did not commit any improper delay in submitting their initial disclosures or producing discovery responses. Even if a delay occurred, however, the Fourth Circuit recognizes that the standard to exclude witnesses or documentary evidence for alleged discovery violations pursuant to Rule 37 presents an extreme remedy that is not available if the conduct is "substantially justified" or "harmless." To determine whether a party's allegedly late disclosures are either substantially justified or harmless, courts in the Fourth Circuit consider five factors:

(1)  The surprise to the party against whom the evidence would be offered;
(2)  The ability of that party to cure the surprise;
(3)  The extent to which allowing the evidence would disrupt the trial;
(4)  The importance of the evidence; and
(5)  The non-disclosing party's explanation for its failure to disclose the evidence.

*E.g.*, *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co*., 318 F.3d 592, 596-97 (4th Cir. 2003).[8]

While the first four factors deal with the harmlessness exception, the final factor deals with the substantial justification exception. Although bad faith is not a separate element of the test, the Fourth Circuit instructs that bad faith may be relevant, under some circumstances, to the fifth factor – the "nondisclosing party's explanation for its failure to disclose evidence." *See id*. at 598. Not one of the five factors justifies the exclusion of Defendants' witnesses or documents challenged by Plaintiff, all of which were timely disclosed in discovery. [9] In fact, Plaintiff has

---

[8] While *Southern States* dealt with a party's failure to timely disclose an expert opinion, the five factors enumerated in this opinion apply equally to alleged violations of Rule 26(a).

[9] The cases relied upon by Plaintiff are readily distinguishable. *Hoyle v. Freightliner*, LLC, 650 F.3d 321, 328-29 (4th Cir. 2011) involved the complete failure to identify a witness in discovery whose declaration was then offered in support of a summary judgment motion. Defendants did no such thing here. In *Hoyle*, the Fourth Circuit ruled the district court did not abuse its discretion in deciding to strike the declaration where plaintiff "was well aware" of the witness and her significance but did not identify the person as a potential witness in initial disclosures or in any discovery responses and only notified defendant of the declaration after the close of discovery and after defendant had filed its motion for summary judgment. *Id.* at 330.

In *Rambus, Inc. v. Infineon Technologies AG*, 145 F. Supp. 2d 721, 723 (E.D. Va. 2001), the district court granted defendant's Rule 37 motion to preclude portions of an expert report that was disclosed after the close of expert discovery and just one week before trial where such report presented an entirely new theory of the case. Despite the complete failure to disclose the report during discovery, the court, nonetheless, allowed the plaintiff to rely on portions of the newly-produced report.

*Barksdale v. E & M Transp., Inc*., No. 3:10cv140, 2010 U.S. Dist. LEXIS 121862, *5-12 (E.D. Va. Oct. 27, 2010), involved a situation where defendants intended to file for bankruptcy (but did not), did not provide any Rule 26(a) disclosures during discovery period, did not serve objections or responses to plaintiff's discovery requests during the discovery period, and plaintiff could not get in touch with defendants regarding these discovery issues until after discovery closed. Ten (10) days after the close of discovery and on the deadline for moving for summary judgment, defendants served initial disclosures and produced documents while plaintiff moved for summary judgment. Later, defendants responded to plaintiff's discovery requests. The Court excluded defendants from using information produced and discussed, for the first time, after the close of discovery.

In *Bland v. Fairfax County*, No. 1:10cv1030, 2011 U.S. Dist. LEXIS 47164, *2-5 (E.D. Va. May 3, 2011),the court granted in part and denied in part defendant's motion for summary judgment. In defendant's reply in support of summary judgment, it argued that the court should not consider certain exhibits to plaintiff's opposition because plaintiff did not identify certain witnesses and documents in her 26(a)(1)(A) disclosures or responses to defendant's discovery requests. The court did not address the issue with Rule 26(a)(1)(A) disclosures or discovery responses, instead it held that "[f]or those witnesses that Bland identified in Plaintiff's [Rule 26(a)(3)] Pre-Trial Disclosure, the Court finds no reason to disregard their testimony under the Southern States standard, even assuming Plaintiff's [Rule 26(a)(3)] Pre-Trial Disclosure fell short of Rule 26 because Defendant cannot be surprised to see their testimony referenced here." Further, the Court held "[f]or those witnessed (sic) *not* identified in Plaintiff's Pre-Trial Disclosure, the Court will not permit Plaintiff to use those witnesses to supply evidence in opposition to the motion. This does not mean, however, that evidence *properly presented* that concerns those witnesses will be disregarded." *Id.* at *4-5 (citations omitted emphasis added). By contrast, in this case, there is no surprise to

utterly failed to *specifically* describe any prejudice he has suffered outside of his arguments in generalities.

### 1. Factor 1: Surprise to the party against whom evidence is offered

Plaintiff challenges the sufficiency of Defendants' initial disclosures, arguing that all four witnesses identified by Defendants in their December 13, 2013 first supplemental disclosures should be excluded, and also that all of the documents Defendants produced after December 12, 2013 should be excluded.

Plaintiff was plainly on notice of individuals whom had discoverable information pertaining to this dispute.  Any surprise to Plaintiff resulting from the supplemental disclosures is minimal, at best.  In their initial disclosures of August 19, 2013, Defendants identified Michelle Stempkowski and Joan Burgos.  At the time of these disclosures, these were the only two individuals Defendants had concluded had knowledge regarding Plaintiff and may be used to support their defenses.  In these disclosures, Defendants also produced the documents pertaining to Plaintiff that they had reviewed and believed would be used to support their defenses.

Plaintiff knew these individuals likely had discoverable information relating to his dispute since August 2013, yet did not serve any discovery requests for the next three months or even mention scheduling any depositions until on or about January 1, 2014, nearly three weeks after Defendants' supplemented their initial disclosures.

In Defendants' supplemental disclosures, Defendants identified Doreen Berryhill, Megan Kieschnick, Rhonda Bateman, and Shawn Helm as individuals likely having discoverable information regarding Defendants' defenses in this case.  Defendants specifically listed these four individuals more than one month before the close of Phase I discovery and before

---

Plaintiff and no prejudice to Plaintiff because all of the witnesses and evidence were timely disclosed.  Plaintiff had the opportunity to depose each person he seeks to exclude, but failed to do so.

Defendants' discovery responses were due.  Yet, Plaintiff took no action with respect to these individuals either.  Of these individuals, only Megan Kieschnick has submitted a declaration in connection with Defendants' Motion for Summary Judgment.

Further, Plaintiff's suggestion that Defendants did not properly disclose their documents to support their defenses is incorrect.  Although Defendants had not yet completed their review of the thousands of potentially responsive documents in this case, Defendants specifically identified, in their supplemental disclosure in December 2013, documents by category and location, as set forth above.  *See* Ex. D.  Further, Defendants produced these documents with their discovery responses on January 3, 2014 in a widely-accepted electronic format that was specifically described by Defendants in their objections to Plaintiff's discovery requests.  The fact that Plaintiff rejected this format only after Defendants produced these documents and "dumped" the CD containing the documents, (*see* Ex. K, at 2), does not mean that the production was untimely or otherwise deficient.  Nonetheless, Defendants attempted to meet Plaintiff's demands – and exceeded their discovery obligations – by promptly re-running and re-producing the entire production in a different format.

Accordingly, Plaintiff cannot credibly argue that he has been surprised in any improper manner under the Federal Rules of Civil Procedure.

### 2. *Factor 2: Ability to cure the surprise*

In this case, to the extent Plaintiff was "surprised" by the allegedly late disclosures, his motion should be denied because Plaintiff could have, but failed to, pursue "discovery mechanisms to cure that surprise in a more timely fashion."  *See Carotek, Inc. v. Textron Fastening Sys.*, No. 3:05-cv-395, 2008 U.S. Dist. LEXIS 31382, at *9 (W.D.N.C. Apr. 16, 2008). Indeed, Plaintiff did almost nothing in discovery to advance his case until Phase I had nearly

concluded. As set forth in Plaintiff's motion, Plaintiff primarily argues that Defendants' initial disclosures and supplements did not disclose all witnesses or provide relevant documentation allegedly known to Defendants from the beginning of the case. While Defendants are certainly cognizant of the affirmative obligation to comply with the Federal Rules, which they have done, Plaintiff took no action to cure any alleged surprise.

Notably, as set forth above, after receiving, on August 19, 2013, Defendants' allegedly inadequate disclosures, Plaintiff did not serve any interrogatories, discovery requests, or otherwise conduct any discovery for more than three months – until November 27, 2013. Defendants timely served their objections on December 12, 2013 and, the next day, supplemented their initial disclosures with the names of potential witnesses and detailed descriptions of relevant documents identified during the course of their document review. Yet, Plaintiff did not even mention scheduling any depositions until his email of January 1, 2014.

Rather than use the discovery tools at his disposal to develop the information disclosed in the initial and supplemental disclosures, Plaintiff did nothing until the eleventh hour and now seeks one of the most serious sanctions, the exclusion of allegedly late-disclosed witnesses and documentary evidence. It is only because Plaintiff – not Defendants – failed to diligently pursue discovery that Plaintiff now finds himself in a bind. This Court should recognize Plaintiff's motion for what it is—a transparent, last-ditch effort to make up for Plaintiff's inattentiveness in this case to-date.

Under similar circumstances, courts consistently have denied Rule 37(c)(1) motions brought by parties who likewise have been "decidedly inactive in developing the case" before filing a motion to preclude witnesses or evidence. *See, e.g.*, *Carotek*, 2008 U.S. Dist. LEXIS 31382, at *11; *Cash v. State Farm Fire & Cas. Co*., 125 F. Supp. 2d 474, 477 (M. D. Ala. 2000).

In *Carotek*, the defendant allegedly failed to disclose witnesses and expert reports in its initial disclosures, but disclosed them in subsequent, supplemental disclosures made a month before the close of discovery.  Plaintiff filed a motion to preclude the use of the late-disclosed witnesses and information without first filing a motion to compel or using other, less drastic discovery mechanisms available to it.  The court ruled that all five factors of the *Southern States* test favored the defendant, holding that any deficiency in the initial disclosures was substantially justified because the case was similar to another matter involving Plaintiffs, but even if not substantially justified, the late disclosure was harmless, largely because of the Plaintiff's inactivity in the case before filing the Rule 37 motion.  The court noted that the Plaintiff had not filed a motion to compel or taken other discovery actions to obtain the information.  In reaching its decision, the court reasoned that the movant cannot sit idly by and wait "'until summary judgment stage to object to the use of materials it made no reasonable efforts to obtain.'" *Carotek*, 2008 U.S. Dist. LEXIS 31382, at *11 (quoting *Cash*, 125 F. Supp. 2d at 477).

In reaching its decision, the *Carotek* court was persuaded by the rationale and decision in *Cash*, in which an Alabama federal district court similarly denied a Rule 37 motion to preclude evidence where the defendant failed to provide a witness affidavit and a copy of an insurance policy as part of its initial disclosures.  In *Cash*, the district court concluded that the movant's inactivity leading up to the preclusion motion rendered any deficiencies in the initial disclosures harmless, stating:

> the moving party cannot sleep on its rights; it may not wait until the summary judgment stage to object to the use of materials that it has made no prior reasonable efforts to obtain. . . .  In this case, Plaintiffs have failed to act reasonably, because they elected not to file any motion to compel disclosure at any point in the six months that this case has been pending. Surely, Plaintiffs' counsel had reason to believe that there was some body of information that should have been disclosed initially. Counsel, therefore, should have taken steps to

attempt to receive the same. . . . Thus, the court finds that Defendant's failure to disclose constitutes an unjustifiable lapse in judgment but was harmless.

*Cash*, 125 F. Supp. 2d at 477.

The same rationale should apply in this case.  Similar to *Carotek and Cash,* in this case Plaintiff was not active until extremely late in Phase I of discovery.[10] And as in the foregoing cases, Plaintiff's lack of activity renders any deficiencies in Defendants' disclosures harmless.

### 3.   *The extent to which allowing the evidence would disrupt the trial.*

The third factor of the *Southern States* test also favors Defendants, and demonstrates that preclusion is not appropriate in this case.  There should be no concern about disrupting trial, as the date for trial in this matter is not until July 21, 2014, more than five months from this filing. This allows Plaintiff ample time to examine and work with the information contained in the initial disclosures, supplements, and document production.  Plaintiff concedes as much in his motion, in which he states that at the present juncture of the litigation, he has not "begun class certification or summary judgment, let alone trial preparation."[11]

### 4.   *Importance of the Evidence*

Even assuming any deficiency in the timing and content of Defendants' initial and supplemental disclosures, Plaintiff has failed to point in any specific way how he has been prejudiced by any alleged late disclosure.  With respect to Defendants' summary judgment motion, the majority of the exhibits in that motion were included in their first initial disclosures in August 2013 and Defendants have not relied, for summary judgment purposes, on any of the

---

[10] Other courts similarly have ruled that Rule 37 preclusion of witnesses or evidence is too draconian and not warranted where, as here, the movant has not first reasonably pursued other discovery tools to develop its case. *See, e.g.*, *Compana  LLC  v . Aetna, Inc*., No. 05-0277RSL, 2006 U.S. Dist. LEXIS 29028, *3-4 (W.D. Wash. May 12, 2006) (holding that even though plaintiff failed to produce any Rule 26(a) disclosures, the defendant's failure to propound written discovery requests or a motion to compel without pursuing other methods to obtain the documents at issue reflected that the motion to exclude is not warranted).

[11] Plaintiff specifically states that the Parties have not begun any of these phases.  Defendants' summary judgment motion, filed minutes after Plaintiff's Motion, is pending and was underway for several weeks before the February 6, 2014 deadline set in the Scheduling Order.

limited number of documents it served on Plaintiff's counsel on January 17, 2014.  With respect to witnesses, Defendants have submitted in support of summary judgment declarations of Joan Burgos, Michelle Stempkowski and Megan Kieschnick.  Ms. Burgos and Ms. Stempkowski were disclosed to Plaintiff in August.  Ms. Kieschnick was disclosed to Plaintiff in the middle of December.  Plaintiff did not diligently pursue discovery from these individuals.  With respect to class certification, once again, Plaintiff has failed to specifically articulate in any way how the timing of Defendants' discovery responses and initial disclosures impact his class certification arguments in any meaningful manner.

### 5. *Explanation for discovery timing*

As discussed at length above, Defendants fully complied with the Federal Rules of Civil Procedure in responding to Plaintiff's discovery requests and providing their initial disclosures.  Defendants made timely initial disclosures and, once their analysis of the case required them to supplement those disclosures in order to disclose additional individuals or documents they may use in their defense, they did so.  To the extent Plaintiff complains about the timing of Defendants' production of documents to him, that timing was solely attributable to the lateness in which Plaintiff served his discovery requests.

Further, Defendants have not acted in bad faith.  As set forth above, the Fourth Circuit has recognized that bad faith may be considered as relevant to this factor, which examines whether the alleged nondisclosure was substantially justified.  *See Southern States*, 318 F.3d at 598.  In this case, Defendants have devoted significant time and expense to discovery and not only have complied with their discovery obligations, but in several instances, have exceeded these obligations in order to facilitate discovery and resolve, in good faith, any discovery disputes.  Plaintiff's motion is a desperate attempt by Plaintiff to compensate for his own failure

to diligently pursue discovery throughout the several months that have transpired in this case and as such, should be denied in its entirety.

## CONCLUSION

For these reasons, Defendants respectfully request that this Court deny Plaintiff's Motion for Voluntary Dismissal under Fed. R. Civ. P. Rule 41 and alternative motion pursuant to Fed. R. Civ. P. Rule 37(c)(1) striking witnesses and information in their entirety.

**CEVA FREIGHT, LLC, CEVA LOGISTICS U.S., INC & CEVA LOGISTICS, LLC**

By: /s/ John C. Lynch

John C. Lynch (VSB No. 39267)
David M. Gettings (VSB No. 80394)
*Attorneys for CEVA Freight, LLC, CEVA Logistics U.S., Inc. and CEVA Logistics, LLC*
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462
Telephone No. (757) 687-7765
Facsimile No. (757) 687-7515
Email:  john.lynch@troutmansanders.com

## **CERTIFICATE OF SERVICE**

I certify that on the 18th day of February, 2014 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

**Counsel for Plaintiff**
Leonard Anthony Bennett
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com

Anthony R. Pecora
Stumphauzer, O'Toole, McLaughlin, McGlamery & Loughman
5455 Detroit Rd
Sheffield Village, OH 44054
(440) 930-4017
Email: apecora@sheffieldlaw.com

Matthew A. Dooley
Stumphauzer, O'Toole, McLaughlin, McGlamery & Loughman
5455 Detroit Rd
Sheffield Village, OH 44054
(440) 930-4001
Email: mdooley@sheffieldlaw.com

Susan Mary Rotkis
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660
Fax: (757) 930-3662
Email: srotkis@clalegal.com

/s/ John C. Lynch
John C. Lynch (VSB No. 39267)
David M. Gettings (VSB No. 80394)
*Attorneys for CEVA Freight, LLC, CEVA Logistics*
*U.S., Inc. and CEVA Logistics, LLC*
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462
Telephone No. (757) 687-7765
Facsimile No. (757) 687-7515
Email:  john.lynch@troutmansanders.com

21730372